# United States Court of Appeals

## For the Eighth Circuit

_____

No. 19-1854

_____

Clayton Franklin, as Administrator for the Estate of Cody J. Franklin

*Plaintiff - Appellee*

v.

Franklin County, Arkansas; City of Ozark, AR; Franklin County Sheriff
Department; Anthony Boen, in his official capacity as Franklin County Sheriff;
Nicholas James, individually and in his capacity as a Franklin County Sheriff's Deputy

*Defendant*s

Nathan Griffith; Joseph Griffith

*Defendants - Appellants*

James Molton

*Defendant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Ft. Smith

_____

Submitted: March 10, 2020
Filed: April 24, 2020

_____

Before GRUENDER, ARNOLD, and SHEPHERD, Circuit Judges.
_____

ARNOLD, Circuit Judge.

After Cody Franklin died while in police custody, his father, as administrator of his estate, brought suit against the police officers who struggled with Franklin on the night he died and against the municipalities who employed them, raising claims under 42 U.S.C. § 1983 for excessive force and claims under state law for battery and wrongful death. The district court granted summary judgment to the municipalities and all but two of the officers. Those two officers filed this interlocutory appeal, arguing that they are entitled to qualified immunity on all claims. We agree with respect to the federal claims and therefore reverse and remand as to them. With respect to the state claims, we remand for further proceedings.

The sheriff's office in Franklin County, Arkansas, received a call one evening that a suspicious person, later identified as Franklin, was walking along a road and in driveways acting bizarrely and "swinging a stick like a sword." A sheriff's deputy found Franklin and spoke with him, and when Franklin made inconsistent statements about his criminal history and his reasons for being in a ditch, the deputy arrested him and took him to the county jail. Franklin called his girlfriend and explained that, if he were held there overnight, it would "take them three fucking dart guns, at least" to control him.

A few hours later, Deputy Nicholas James decided to move Franklin from the general population pod to an isolation cell because Franklin was fighting with inmates and appeared to be under the influence of drugs. An impasse ensued when James opened the door to the pod and asked Franklin to go with him. Franklin refused, dropped into a combative stance, and challenged James, who declined the invitation to fight. Franklin then proceeded to throw things at James and tried to pull him into the

cell. Officer Nathan Griffith of the Ozark Police Department, who had arrived to help move Franklin, wrestled Franklin to the floor after a struggle, but Franklin kicked Griffith off and stood up. When Griffith shot Franklin with his taser, Franklin fell to the floor again. Despite commands to the contrary, Franklin began to stand, so Griffith tased him yet another time. It is possible that Griffith may have tased Franklin three more times, but even if he did it had no effect on Franklin. When Franklin started toward them again, the officers finally managed to get Franklin to the ground, handcuff him, and move him to the isolation cell.

Around this time, Sergeant Joseph Griffith of the Ozark Police Department arrived to assist James and Nathan (since two Griffiths are involved now, we will refer to them individually by their first names to avoid confusion and together as "the Griffiths"). The officers tried to remove Franklin's handcuffs: With Franklin lying face down on the ground, the three officers used their weight to subdue him, but he continued to struggle, so Joseph warned Franklin that he would use the taser if Franklin kept resisting. Because Franklin continued to resist, Joseph tased him on drive-stun mode two or three more times until Franklin stopped fighting and relaxed his arms, allowing the officers to remove his handcuffs. After a few minutes, the officers called for an ambulance, and Franklin was transported to a local hospital. He was pronounced dead a short time later. The medical examiner opined that the cause of death was "methamphetamine intoxication, exertion, struggle, restraint, and multiple electro muscular disruption device applications."

The district court held, as relevant, that neither of the Griffiths was entitled to qualified immunity on the § 1983 claim for excessive force or the state-law claims for battery and wrongful death. The Griffiths are entitled to qualified immunity on their federal claim if their conduct did not violate clearly established constitutional rights of which a reasonable person would know. *See White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam). The pretrial denial of qualified immunity is appealable to the

extent that the appeal turns on an issue of law. *See Estate of Walker v. Wallace*, 881 F.3d 1056, 1059 (8th Cir. 2018).

In reaching its result, the district court appeared to rely on two clearly established legal principles that it believed were relevant, the first being the constitutional right to be free from excessive force. But the Supreme Court has cautioned courts not to define clearly established rights, especially the right to be free from excessive force, at too high a level of generality. *See, e.g.*, *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam). Broadly defined rights by themselves do not create clearly established law outside an "obvious case," *see Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam), a proposition that the district court mentioned apparently because it believed that the Griffiths' use of force here was obviously excessive. But we have explained that an officer's "repeated use of [a] taser against a potentially violent, defiant arrestee was not an obvious case." *See Brossart v. Janke*, 859 F.3d 616, 625 (8th Cir. 2017). We cannot square our observation in *Brossart* with the district court's thinking here.

The second clearly established legal principle that the district court believed was relevant was "that it is excessive force to use a taser on a nonfleeing, nonviolent misdemeanant." Laying aside the question of whether Franklin was a mere misdemeanant after he fought with the police officers, the record is plain that Franklin acted violently and uncooperatively immediately before each shock of the tasers. So this second legal principle doesn't fit the facts of this case.

After evaluating the undisputed material facts in the record, which we rehearsed above, we hold that the Griffiths acted reasonably under the circumstances and so did not violate Franklin's right to be free from excessive force, even if they tased him up to eight times. Because the Griffiths did not violate the constitution, they are entitled to qualified immunity. *See Putnam v. Keller*, 332 F.3d 541, 546 (8th Cir. 2003). We have numerous cases permitting officers to use tasers on noncompliant, violent suspects. In *Brossart*, we held that an officer who tased a violent, defiant arrestee at

least five times did not violate the Fourth Amendment. 859 F.3d at 622, 625. We did so again when officers tased a violent, resisting arrestee up to ten times. *See Zubrod v. Hoch*, 907 F.3d 568, 572, 580 (8th Cir. 2018). These decisions are consistent with the Supreme Court's holding, in the context of a police chase in which officers fired fifteen gunshots, that "if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended." *See Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014). Here, the threat of Franklin's violent aggression did not subside until after the final shot of the taser. We have held it reasonable, moreover, for officers to use tasers and their own body weight to subdue combative jail detainees, apparently under the influence of drugs, who resist officer efforts to move them. *See Ryan v. Armstrong*, 850 F.3d 419, 422–24, 427 (8th Cir. 2017). In short, the scene here "was a tumultuous one involving seemingly aggressive and noncompliant behavior, circumstances which we have previously held rendered officers' uses of tasers reasonable." *Rudley v. Little Rock Police Dep't*, 935 F.3d 651, 654 (8th Cir. 2019).

The fact that Franklin was tased three times in drive-stun mode while in handcuffs does not affect the result. Franklin continued to resist the officers while he was in handcuffs. We have allowed the use of tasers on detainees in handcuffs in appropriate circumstances. *See, e.g.*, *LaCross v. City of Duluth*, 713 F.3d 1155, 1156–57 & n.3 (8th Cir. 2013). A person in handcuffs can still present a danger to officers. *See United States v. Pope*, 910 F.3d 413, 417 (8th Cir. 2018). We have also observed that a tasing in drive-stun mode "only causes discomfort and does not incapacitate the subject," suggesting that effects of such force are de minimis. *See Brossart*, 859 F.3d at 626. We therefore cannot say that Joseph acted unreasonably when he used a taser as he did in this circumstance.

It could be argued that the use of force on Franklin while he was in the isolation cell was unreasonable and thus excessive because the officers did not have a sound reason for wanting to remove Franklin's handcuffs. Perhaps they could have simply

closed and locked the door and left Franklin to his own devices. But the Griffiths offered objectively good reasons for removing the handcuffs. As Joseph testified during his deposition and as both Griffiths explained in their incident reports, they wanted Franklin to be able to move about the cell freely, and if he remained handcuffed in the drug-influenced state he was in, he might well have fallen while cuffed and broken his arms or wrists or hit his head. It was also objectively reasonable for them to be concerned that Franklin might be able to maneuver his hands and body in such a way as to use the cuffs as a weapon when someone entered the cell.

We therefore hold that the Griffiths are entitled to qualified immunity on the § 1983 excessive-force claims because their actions did not violate the constitution. We remand the state claims to the district court for further proceedings, including a determination whether to exercise supplemental jurisdiction over those claims. *See Moore-Jones v. Quick*, 909 F.3d 983, 987 (8th Cir. 2018).

Reversed and remanded.

_____