# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-2192
_____

Jeremy J. Boudoin

*Plaintiff - Appellee*

v.

Terral L. Harsson, Individually and in his Official Capacity

*Defendant - Appellant*

John Does, 1-5

*Defendant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: January 15, 2020
Filed: June 22, 2020
_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Jeremy Boudoin sued Arkansas State Police Trooper Terral Harsson for excessive force under 42 U.S.C. § 1983 and for assault and battery under state law. The district court denied qualified and statutory immunity. We reverse.

**I.**

At roughly 5:00 p.m. on August 27, 2017, multiple dispatch calls from officers in the Searcy, Arkansas, area went out regarding a fleeing suspect.[1] They described the suspect as a white male driving a black motorcycle and wearing jeans, a black helmet, and a black jacket. The suspect did not have a license plate on his motorcycle and was driving at speeds in excess of 100 miles per hour.

Officer Tracy Jones first pursued the suspect but lost sight of him on Arkansas Highway 67-167 southbound. Officer Joseph Gossett then spotted the suspect and pursued him until he too lost sight of the suspect on Highway 367 as he headed toward Searcy, Arkansas. At 5:09 p.m., Officer Jimmy Edge spotted Jeremy Boudoin in Searcy. Boudoin, a white male, was riding a black motorcycle with no license plate and wearing jeans and a black helmet. Officer Edge turned on his patrol car lights and pursued Boudoin onto Highway 67-167, communicating to dispatch that he lost sight of Boudoin around mile marker 51 as Boudoin hit a speed in excess of 100 miles per hour. Another officer, Larry House, picked up Boudoin at mile marker 54, but he also quickly lost sight of him. Boudoin denies seeing either officer.

State Trooper Terral Harsson received these dispatch calls. At approximately 5:15 p.m., Harsson spotted Boudoin coming over a hill on Highway 67-167

---

[1]In denying Harsson summary judgment, the district court provided only a single paragraph summary of the facts relevant to its qualified immunity analysis. As a result, we adopt the limited facts as determined by the district court unless "blatantly contradicted by the record," *Saylor v. Nebraska*, 812 F.3d 637, 642 (8th Cir. 2016), but because the district court "fail[ed] to make . . . factual finding[s] on . . . issue[s] relevant to our purely legal review," we must undertake a "cumbersome review of the record," setting out the undisputed facts the district court, viewed in the light most favorable to Boudoin, "*likely* assumed," *Johnson v. Jones*, 515 U.S. 304, 319 (1995).

northbound between the 54 and 55 mile markers at a high rate of speed.[2] Harsson began to move into the highway in front of Boudoin and turned on his emergency lights. Boudoin slowed, but instead of immediately moving to the side of the road, he tried to get in front of Harsson because, according to Boudoin, he believed that Harsson wanted him to stop in front of the patrol car. Harsson prevented Boudoin from going around him, and Boudoin eventually drove onto the shoulder of the road behind Harsson's patrol car.[3]

Once on the shoulder of the highway, Boudoin did not deploy his kickstand. Instead, he began to shift his weight on the motorcycle, moving his left leg up and down and "clicking" the motorcycle's gear shifter. According to Boudoin, he was struggling to put his motorcycle in neutral because his gear shifter is "a little finicky." Harsson testified that, given the information relayed by other officers and what he personally observed, he believed Boudoin was attempting to flee again.

Approximately ten seconds after Boudoin came to a stop, Harsson radioed Officer House, who by then had parked behind Boudoin, and Harsson said "if you want to taser him, taser him." When Officer House did not move to arrest Boudoin, Harsson exited his vehicle and deployed his taser without issuing a warning. The taser struck Boudoin in the neck and chest, causing him to collapse and his motorcycle to fall on his right leg. Around thirteen seconds passed from the time Harsson radioed House to when Harsson deployed his taser.

---

[2]Harsson testified that Boudoin was traveling 104 miles per hour when he spotted him. Boudoin denies he reached that rate of speed but admits that he was speeding.

[3]Harsson's patrol car was equipped with a dashboard camera that recorded Harsson's stop of Boudoin. The camera, however, pointed to the front of the vehicle, and Boudoin was sitting to its rear. As a result, while we have an audio recording, the video does not depict the moment Harsson tased Boudoin or what Boudoin did immediately before the tasing.

Boudoin was arrested for speeding and fleeing, but subsequent developments in the case revealed that he was not the suspect that initially fled from Officer Jones. Accordingly, Boudoin pleaded guilty to speeding, and the fleeing charge was dismissed.

Boudoin brought suit under 42 U.S.C. § 1983, alleging that Harsson's use of a taser constituted excessive force in violation of the Fourth Amendment. Boudoin also brought state-law claims for assault, battery, false imprisonment, and false arrest. Harsson filed a motion for summary judgment, which the district court granted in part and denied in part. Specifically, the court granted Harsson's motion for summary judgment as to Boudoin's false arrest and false imprisonment claims, but it denied Harsson qualified immunity for Boudoin's excessive force claim and denied Harsson statutory immunity for Boudoin's state-law assault and battery claims because it determined that there remained a question of material fact as to whether Boudoin was attempting to flee at the time Harsson deployed his taser. Harsson appeals.

## II.

Harsson first argues he is entitled to qualified immunity because his use of the taser was reasonable under the circumstances and thus did not constitute excessive force. In the alternative, he contends that it was not clearly established at the time of the incident that the use of a taser to stop a fleeing suspect constituted excessive force.

"Qualified immunity protects a government official from liability in a [§] 1983 action, unless the official's conduct violates clearly established constitutional or statutory law of which a reasonable person would have known." *Jackson v. Stair*, 944 F.3d 704, 710 (8th Cir. 2019). In evaluating whether Harsson is entitled to qualified immunity, we thus ask two questions: (1) does "the evidence, viewed in the light most favorable to [Boudoin], establish[] a violation of a constitutional or statutory right," and (2) was "the right . . . clearly established at the

-4-

time of the violation, such that a reasonable official would have known his actions were unlawful[?]" *Rudley v. Little Rock Police Dep't*, 935 F.3d 651, 653 (8th Cir. 2019). "The pretrial denial of qualified immunity is appealable to the extent that the appeal turns on an issue of law." *Franklin v. Franklin Cty.*, 956 F.3d 1060, 1061-62 (8th Cir. 2020). We review an order denying qualified immunity on a motion for summary judgment *de novo*, *Parker v. Chard*, 777 F.3d 977, 979 (8th Cir. 2015), "consider[ing] only the facts that were knowable to the defendant officer[]" at the time of the incident. *White v. Pauly*, 580 U.S. ---, 137 S. Ct. 548, 550 (2017) (per curiam).

In this case, we take up the Supreme Court's invitation in *Pearson v. Callahan* and first consider whether the right allegedly violated was clearly established on August 27, 2017. *See* 555 U.S. 223, 236-37 (2009). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (brackets omitted)). There, of course, is no question that the use of objectively unreasonable force violates the Fourth Amendment. *See Tatum v. Robinson*, 858 F.3d 544, 547 (8th Cir. 2017). But the Supreme Court has repeatedly instructed that "clearly established law" may not be defined "at a high level of generality." *White*, 137 S. Ct. at 552. Instead, "clearly established law must be 'particularized' to the facts of the case," *id.* (quoting *Anderson*, 483 U.S. at 640), and thus, a plaintiff must generally "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment," *District of Columbia v. Wesby*, 583 U.S. ---, 138 S. Ct. 577, 590 (2018). This factual "specificity is especially important in the Fourth Amendment context, where . . . '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.'" *Mullenix v. Luna*, 577 U.S. ---, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)).

Even so, we are cognizant that for law to be clearly established, there does not need to be "a case directly on point." *White*, 137 S. Ct. at 551. Instead, a plaintiff may point to existing circuit precedent that involves sufficiently "similar facts" to "squarely govern[]" the officer's actions such that the officer had "notice that [his] specific use of force [was] unlawful," *Kisela v. Hughes*, 584 U.S. ---, 138 S. Ct. 1148, 1153 (2018) (per curiam), present "a robust consensus of cases of persuasive authority" doing the same, *see De La Rosa v. White*, 852 F.3d 740, 745 (8th Cir. 2017), or demonstrate that a general constitutional rule applied with "obvious clarity" to the facts at issue, *see Rokusek v. Jansen*, 899 F.3d 544, 548 (8th Cir. 2018). At the heart of this instruction is a simple principle: state actors "are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004).

In denying Harsson qualified immunity, the district court cited *Nance v. Sammis* as clearly establishing that a suspect has a "right to be free from excessive force if [he] did not pose a threat of serious physical harm to anyone" and was not "a flight risk." *See* 586 F.3d 604, 611 (8th Cir. 2009) ("[A] suspect cannot be apprehended by use of deadly force unless that individual poses a threat of serious physical harm."). The court found that a factual dispute precluded Harsson's claim of qualified immunity because whether Boudoin's "actions posed a serious[] threat of physical harm to anyone" or could be reasonably viewed as "an attempt to flee" "depends on what occurred," a question it determined was "a fact issue reserved for the jury." The district court made this determination even as it failed to identify a single fact that was in dispute concerning the physical actions Boudoin took, instead pointing to the dispute regarding what Boudoin was subjectively "trying" to do.

We disagree with both the district court's characterization of the right at issue as well as its analysis of whether a genuine dispute of material fact precluded qualified immunity. *See Thompson v. Dill*, 930 F.3d 1008, 1012-13 (8th Cir. 2019) (explaining the scope of our jurisdiction to review a district court's denial of summary judgment). First, we resist any implication that a single taser shock constitutes "deadly force." *See McKenny v. Harrison*, 635 F.3d 354, 362 (8th Cir.

2011) (Murphy, J., concurring) ("[T]he Taser, in general, is more than a non-serious or trivial use of force but less than deadly force."). And second, construing the facts in the light most favorable to Boudoin, we do not believe that only a "plainly incompetent" officer would have thought using a taser under the circumstances complied with the strictures of the Fourth Amendment. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986). Regardless of whether Boudoin was actually attempting to flee, Harsson could reasonably conclude that he was based on the information provided to him by other officers and the undisputed actions he observed. *See Kelsay v. Ernst*, 933 F.3d 975, 981 (8th Cir. 2019) (en banc) (noting that whether a reasonable officer could have believed a suspect's conduct constituted noncompliance in light of undisputed facts is a question of law). And, as we explain below, because Harsson could reasonably conclude Boudoin was attempting to flee, Harsson did not violate clearly established law by deploying his taser against Boudoin.

We start by defining "the circumstances with which [Harsson] was confronted." *Anderson*, 483 U.S. at 640. In so doing, we consider the totality of the circumstances, guided by the Supreme Court's instruction in *Graham v. Connor* to consider particularly "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." 490 U.S. 386, 396 (1989).

We first conclude that it was reasonable for Harsson to believe that Boudoin was attempting to evade arrest by flight. Harsson knew multiple officers had attempted to stop a white male riding a black motorcycle with no license plate for speeding and that the suspect had evaded arrest multiple times by fleeing at a high rate of speed. Officer House radioed dispatch that he had lost sight of the suspect at mile marker 54, and within moments, Harsson spotted Boudoin at mile marker 55, driving at a high rate of speed. Harsson then personally observed Boudoin engage in actions that could reasonably be interpreted as an attempt to flee. Boudoin admitted that he did not immediately pull to the shoulder of the highway but instead

tried to get in front of Harsson when Harsson attempted to stop him. Nor did he deploy his kickstand once forced to the shoulder of the highway. Instead, Boudoin conceded that at the time Harsson engaged his taser, Boudoin was shifting his weight, moving his left leg in an "up and down motion," and "clicking" the gear shifter. It is possible that Boudoin's actions are susceptible to an innocent explanation—perhaps, for instance, he was attempting to place his motorcycle in neutral in order to have a discussion with Harsson—but a reasonable officer, based on the same facts, could have concluded otherwise. *See Partlow v. Stadler*, 774 F.3d 497, 503 (8th Cir. 2014) (granting qualified immunity to officers that used deadly force against a suspect when it was ambiguous whether the suspect was attempting to lower his weapon in compliance with their orders or take aim at them); *Loch v. City of Litchfield*, 689 F.3d 961, 966 (8th Cir. 2012) (similar). "[I]in mistake cases the question is simply whether the mistake, whether of law or of fact, was an objectively reasonable one." *United States v. Phillips*, 679 F.3d 995, 998 (8th Cir. 2012). Viewing the facts in the light most favorable to Boudoin, we conclude a reasonable officer could have believed that Boudoin was attempting to resume flight.[4]

Next, we are not prepared to say the crime at issue was not serious. *See Graham*, 490 U.S. at 396. Although Boudoin was charged with misdemeanor fleeing, *see* Ark. Code Ann. § 5-54-125(a), fleeing by means of a vehicle is a Class D felony if the person attempts to flee in a manner "manifesting extreme indifference to the value of human life," *id.* § 5-54-125(d)(2). Once Boudoin was in handcuffs, Harsson asked Boudoin, "what's wrong with pulling over and taking a speeding ticket?" and told Boudoin that because he instead chose to flee, "you caught yourself

---

[4]Boudoin contends that his motorcycle did not have a kick start and therefore it was unreasonable for Harsson to believe Boudoin's "jumping up and down" signaled he was attempting to flee. Boudoin misperceives a crucial point. Whether Boudoin's motorcycle had a kick start or not, based on the totality of the circumstances, a reasonable officer could have concluded that Boudoin was attempting to shift his motorcycle into gear so he could quickly take off from the shoulder of the highway.

some felony charges today." Though he was eventually only charged as a misdemeanant, we think there can be little doubt but that a reasonable officer could conclude that fleeing from four other officers at speeds exceeding 100 miles per hour in evening traffic demonstrates an extreme indifference to the value of human life. *See Weeks v. State*, 977 S.W.2d 241, 243 (Ark. Ct. App. 1998).

For similar reasons, because Harsson believed Boudoin had fled from no fewer than four other officers, traveling at speeds exceeding 100 miles per hour in evening traffic, he could reasonably conclude that Boudoin posed an "immediate threat to the safety of the officers [and] others." *See Graham*, 490 U.S. at 396. Harsson could reasonably believe that had Boudoin successfully fled, he would have risked his safety and that of other drivers and the officers as they pursued him. And we will not "lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive *so recklessly* that they put other people's lives in danger." *See Scott v. Harris*, 550 U.S. 372, 385 (2007); *see also id.* at 383-84 (noting that a fleeing motorist in high-speed chase "posed an actual and imminent threat to the lives of . . . other civilian motorists" and "to the officers involved in the chase").

Given these circumstances, none of the decisions relied on by Boudoin supports denying Harsson qualified immunity. On appeal, Boudoin abandons the district court's dependence on *Nance* and instead relies primarily on *Brown v. City of Golden Valley*, 574 F.3d 491 (8th Cir. 2009). Boudoin interprets *Brown* as clearly establishing that "intentionally tasering, without warning, an individual who has been stopped for a non-violent misdemeanor offense and who is not resisting or fleeing arrest while his hands are visible violate[s] that individual's Fourth Amendment right to be free from excessive force."

Boudoin construes correctly the rule set out in *Brown*, but *Brown* is inapposite to this case. There, the officer tased a "seat-belt-restrained passenger cowering in her automobile." *Rudley*, 935 F.3d at 654 (citing *Brown*, 574 F.3d at 499). Here, the circumstances—as explained above—are quite different, and as a result, the correct question in this case is whether it was clearly established that the use of a

taser, without warning, against a suspect reasonably *perceived as attempting to flee* constitutes excessive force. *Brown* does not speak to that question, and thus it cannot "squarely govern[] the specific facts at issue." *Kisela*, 138 S. Ct. at 1153 (internal quotation marks omitted); *see Brown*, 574 F.3d at 499 (holding that it constituted excessive force to use a taser against "a nonviolent, suspected misdemeanant who was not fleeing or resisting arrest, who posed little to no threat to anyone's safety, and whose only noncompliance with the officer's commands was to disobey two orders to end her phone call to a 911 operator").

Boudoin points us to no other cases that clearly establish that Harsson's actions constituted excessive force under the circumstances, and we have not found any based on an independent review. Nor do we believe that there is "obvious cruelty inherent" in the use of a taser that would have put every reasonable officer on notice that Harsson's actions were unreasonable. *See Hope v. Pelzer*, 536 U.S. 730, 745 (2002). Instead, we conclude that our most analogous circuit precedent favors Harsson's "particular conduct." *See Mullenix*, 136 S. Ct. at 308 (emphasis omitted)*; Cook v. City of Bella Villa*, 582 F.3d 840, 851 (8th Cir. 2009) (holding that an officer's use of his taser, without warning, during a "rapidly escalating situation" was reasonable when an individual had stepped out of his vehicle and taken a step toward the officer); *McKenny*, 635 F.3d at 360 (discussing *Greiner v. City of Champlin*, 27 F.3d 1346, 1355 (8th Cir. 1994), and noting that we have previously concluded that officers acted reasonably when they deployed a taser against a suspect who "made a sudden movement toward [a] window, which the officers reasonably interpreted as an active attempt to evade arrest by flight," even though the use of the taser resulted in the suspect's death).

We pause to note that we do not believe the fact that Harsson waited several seconds into the stop to tase Boudoin, communicated to House that he was authorized to tase Boudoin, or failed to warn Boudoin before tasering him changes our analysis of whether Harsson violated a clearly established right. Though "[t]iming, warnings, and the physical capacity of a suspect are among the many factors relevant to determining whether use of a taser amounts to excessive force in

a particular situation," *Procknow v. Curry*, 826 F.3d 1009, 1014 (8th Cir. 2016), we have eschewed a bright-line rule requiring officers to issue a warning before deploying a taser against a suspect. *Brown*, 574 F.3d at 499. Harsson testified that he waited to exit his cruiser because he thought House, who was parked behind Boudoin, would make the arrest and because he believed at least one officer needed to remain in his vehicle in order to give chase should Boudoin resume flight. When Harsson exited his vehicle, Boudoin continued to shift his weight on the motorcycle, move his leg up and down, and "click" his gear shifter, such that a reasonable officer could conclude that at any moment Boudoin might resume flight. *Cf. Plumhoff v. Richard*, 572 U.S. 765, 777 (2014) (upholding as reasonable an officer's use of deadly force where "a reasonable police officer could have concluded" the suspect "was intent on resuming his flight and that, if he was allowed to do so, he would once again pose a deadly threat for others on the road"). Though, "with the 20/20 vision of hindsight," one may determine it was preferable for Harsson to warn Boudoin before deploying his taser, we think it clear that "the nature and quality of the intrusion" did not violate clearly established law given "the countervailing governmental interests at stake." *See Z.J. ex rel. Jones v. Kan. City Bd. of Police Comm'rs*, 931 F.3d 672, 681 (8th Cir. 2019); *Brossart v. Janke*, 859 F.3d 616, 626-27 (8th Cir. 2017) (finding officer's use of a taser in drive-stun mode was reasonable where officer tased, without warning, a handcuffed individual sitting in the back of a police car because he refused to comply with officer's command to move to the middle of the seat).

Given the lack of any contrary instruction that squarely governs the circumstances of this case, it was not clearly established on August 27, 2017 that it constituted excessive force in violation of the Fourth Amendment to use a taser, without warning, against a suspect perceived as attempting to flee from officers. *See Cockrell v. City of Cincinnati*, 468 F. App'x. 491, 495-97 (6th Cir. 2012) (examining cases from several circuits and finding that it was not a violation of clearly established law to use a taser, without warning, against "a misdemeanant, fleeing from the scene of a non-violent misdemeanor, but offering no other resistance and disobeying no official command"). Even if Harsson should have attempted to

apprehend Boudoin without deploying his taser or should have given a warning, his actions fall along the "hazy border between excessive and acceptable force." *See Saucier*, 533 U.S. at 206. Harsson is thus entitled to qualified immunity on Boudoin's § 1983 excessive force claim.

## III.

Harsson next argues that the district court erred in denying his motion for summary judgment as to the state-law claims of assault and battery because he is entitled to statutory immunity under Arkansas law. Specifically, he contends that Boudoin failed to produce any evidence of malice as required to defeat state statutory immunity. In response, Boudoin renews his argument that he has demonstrated a triable issue of fact with regard to malice because of Harsson's statement to Officer House that "if you want to taser him, taser him." We conclude that Harsson is entitled to statutory immunity under Arkansas law.

We review the district court's interpretation of state law *de novo*. *See Burlington N. R.R. Co. v. Farmers Union Oil Co.,* 207 F.3d 526, 534 (8th Cir. 2000). Arkansas law provides that "[o]fficers and employees of the State of Arkansas are immune from liability and from suit . . . for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment." Ark. Code Ann. § 19-10-305(a). Arkansas courts define malice as "an intent and disposition to do a wrongful act greatly injurious to another." *Simons v. Marshall*, 255 S.W.3d 838, 842 (Ark. 2007).

Suits against officers or employees for malicious acts "are suits against the officers or employees personally, and they are liable to the extent anyone would be liable under tort law." *Id.* at 842. But the Arkansas Supreme Court "has recognized that the immunity provided by section 19-10-305 is similar to that provided by the Supreme Court for federal civil-rights claims." *Id.* Accordingly, "an official is immune from suit if his actions did not violate clearly established principles of law of which a reasonable person would have knowledge," *id.*, because to demonstrate

-12-

malice a plaintiff must show "[a] conscious violation of the law," *Fegans v. Norris*, 89 S.W.3d 919, 924-25 (Ark. 2002) (per curiam).

We have no difficulty concluding that Boudoin failed to produce evidence sufficient to create a triable issue of fact regarding malice. *See Langford v. Norris*, 614 F.3d 445, 465 (8th Cir. 2010). Boudoin cannot show malice because he has not shown a conscious violation of the law. Harsson was authorized to use some force to arrest Boudoin under Arkansas law, *Crouch v. Richards*, 208 S.W.2d 460, 462 (Ark. 1948) ("In making the arrest or preventing the escape, the officer may exert such physical force as is necessary . . . ."); *see also Graham*, 490 U.S. at 396 ("[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion . . . ."), and because Harsson's use of force "did not violate clearly established principles of law of which a reasonable person would have knowledge," he is "immune from suit," *Fegans*, 89 S.W.3d at 924-25 (concluding that officials act with malice when their conduct constitutes "the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent"); *cf. Hassan v. City of Minneapolis*, 489 F.3d 914, 920-21 (8th Cir. 2007) (analyzing an analogous Minnesota state immunity statute and finding that "[b]ecause the facts establish the officers' use of deadly force was reasonable, a reasonable fact finder could not conclude the officers' conduct was willful or malicious").

Further, the only evidence Boudoin produced to demonstrate malice was Harsson's comment to House, "if you want to taser him, taser him." This statement cannot be used to show a "conscious violation of the law" because Harsson could reasonably conclude Boudoin was attempting to flee. Thus, this comment, at most, indicates that seconds before he decided to exit his vehicle and seize Boudoin, Harsson observed conduct he believed justified the use of a taser. This is simply insufficient to establish a triable issue of fact regarding malice. *See Ark. Dep't of Envtl. Quality v. Al-Madhoun*, 285 S.W.3d 654, 660 (Ark. 2008) ("[A] bare allegation of willful and wanton conduct will not suffice to prove malice.").

Because Boudoin has failed to show a triable issue of fact concerning whether Harsson acted with malice, Harsson is entitled to state statutory immunity on Boudoin's state-law claims of assault and battery.  *See Langford*, 614 F.3d at 465.

## IV.

For the foregoing reasons, we reverse and remand with instructions to enter summary judgment in favor of Harsson.

_____