# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-2478

_____

Cecilia Perry, *Plaintiff* Ad Litem for Christina Brooks, Next of Friend for D.B,
D.B, D.B and D.B

*Plaintiff - Appellee*

v.

Jermanda Adams

*Defendant - Appellant*

City of St. Louis; St. Louis City Justice Center; City of Jennings; City of Jennings
Detention Center; Demetrius Staples; Kent Menning

*Defendant*s

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 16, 2020
Filed: April 5, 2021

_____

Before SMITH, Chief Judge, LOKEN and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Defendant Jermanda Adams appeals the district court's denial of a summary judgment motion rejecting qualified immunity as against a claim alleging deliberate

indifference to a detainee's suicide risk. Because Adams's conduct did not violate the detainee's clearly established rights, she is entitled to qualified immunity. Accordingly, we reverse.

In this tragic case, a pretrial detainee, DeJuan Brison, committed suicide by hanging himself in a cell after being transferred from the St. Louis City Justice Center to the City of Jennings Detention Center. Brison's mother, on behalf of herself and other family members, sued several entities and individuals associated with the cities. Material to the present appeal, they sued Adams alleging she was a St. Louis City Justice Center Officer who failed to notify detainee intake personnel with the City of Jennings that Brison was suicidal when St. Louis transferred Brison into Jennings's custody. The district court denied summary judgment based on qualified immunity, and Adams brings this interlocutory appeal to our court pursuant to 28 U.S.C. § 1291. See Mitchell v. Forsyth, 472 U.S. 511, 530 (1985) ("[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment."). We review the denial of qualified immunity de novo. Quraishi v. St. Charles Cty., Mo., 986 F.3d 831, 835 (8th Cir. 2021).

The factual record on summary judgment is extensive, but we need not recount all of the details to conduct our analysis. Taking the record in the light most favorable to the plaintiffs, we can say the following about Adams's knowledge and actions surrounding Brison's transfer. First, the St. Louis City Justice Center had in place a "Crisis Watch Status" policy that required a rigorous level of supervision over detainees determined to be at suicide risk: "Full Suicide Watch." Second, the policy had a less restrictive watch status for use with detainees determined by a "Qualified Mental Health Professional" to be "acutely disturbed, but not suicidal or homicidal": "Close Observation." Third, by internal policy, if the St. Louis City Justice Center transferred a detainee to another facility or jurisdiction, officials were required to notify the receiving authorities of any watch status and provide a copy of the

detainee's "Medical Screening Assessment Form."  Fourth, Brison had been on Full Suicide Watch while in the custody of the St. Louis City Justice Center.  Fifth, a Qualified Mental Health Professional determined Brison was non-suicidal and moved him from Full Suicide Watch to the less-restrictive Close Observation status while Brison was still in St. Louis's custody.  Sixth, Adams was in a position giving rise to a duty under the local policy to inform receiving officials at Jennings of Brison's mental health and watch status.  And seventh, Adams did not provide such notice to Jennings.

The pending claim against Adams is a 42 U.S.C. § 1983 claim asserting a violation of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution.  Plaintiffs allege specifically that Adams exhibited deliberate indifference to Brison's substantial risk of suicide by failing to warn intake personnel at Jennings.  A pretrial detainee's deliberate indifference claim is governed by the Fourteenth Amendment which extends to detainees at least the same protections that convicted prisoners receive under the Eighth Amendment.  See Kahle v. Leonard, 477 F.3d 544, 550 (8th Cir. 2007).  To succeed on such a claim, the plaintiffs must prove Adams held actual knowledge that Brison was at substantial risk of serious harm but failed to take reasonable action in response to that known risk.  See Farmer v. Brennan, 511 U.S. 825, 829 (1994) (defining "deliberate indifference" as "requiring a showing that the official was subjectively aware of the risk"); A.H. v. St. Louis Cnty., Mo., 891 F.3d 721, 726 (8th Cir. 2018).

Because Adams is a public official asserting a defense of qualified immunity, she is immune from suit under § 1983 unless her actions violated constitutional or statutory rights that were clearly established at the time of the violation.  See Howard v. Kansas City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009).  For qualified-immunity purposes, rights are not defined at a broad level of generality.  See Engleman v. Deputy Murray, 546 F.3d 944, 949 n.4 (8th Cir. 2008) ("The Supreme Court has clearly stated that in establishing qualified immunity, the test must be

applied at a level of specificity that approximates the actual circumstances of the case."). Rather, for a right to have been clearly established at the time of the alleged violation, there must have existed "circuit precedent that involves sufficiently similar facts to squarely govern [Adams's] conduct in the specific circumstances at issue, or, in the absence of binding precedent, . . . a robust consensus of cases of persuasive authority constituting settled law." Graham v. Barnette, 970 F.3d 1075, 1090 (8th Cir. 2020) (cleaned up). At the end of day, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986), permitting liability only for the transgression of "bright lines," not for violations that fall into "gray areas," Boudoin v. Harsson, 962 F.3d 1034, 1040 (8th Cir. 2020) (citation omitted).

The question of qualified immunity as against the current § 1983 claim, therefore, does not ask simply whether Adams's alleged actions or failures to act might have violated an internal policy at the St. Louis City Justice Center or whether as a matter of state law such actions might have constituted negligence. Cole v. Bone, 993 F.2d 1328, 1334 (8th Cir.1993) ("the issue is whether the government official violated the Constitution or federal law, not whether he violated the policies of a state agency"). Similarly, it does not ask whether Adams possessed knowledge that Brison was at "some risk" yet failed to act. Rather it asks whether *on the facts presented*, Adams knew of a substantial risk of serious harm yet failed to act.

Framed at the level of specificity that the Supreme Court mandates for our analysis, we understand the specific question we must answer to be as follows: "Does a transferring officer violate a pretrial detainee's Fourteenth Amendment rights by failing to inform a receiving entity that the detainee is on a close-observation status if a mental health professional has determined that the detainee is not suicidal and if the applicable close-observation status is, in and of itself, indicative of the absence of a suicide risk?" Framed in this way, and even assuming that Adams had knowledge that Brison was on Close Observation, we find no clearly established

-4-

right. Brison was analyzed by a mental health professional and was on a watch status indicating he was not suicidal. Therefore, this is not a case like <u>Boswell v. Sherburne County</u>, 849 F.2d 1117, 1122 (8th Cir. 1988), where a jailer with knowledge of a detainee's serious medical condition failed to contact medical professionals or advise incoming jailers as to the detainee's risk. Here, short of a suicide risk which a mental health professional found to be absent, the plaintiffs do not identify what risk of "serious harm" Brison faced and what actual knowledge Adams possessed regarding any such risk. Of course, detention officers have a general duty to guard reasonably against known risks of suicide. <u>Coleman v. Parkman</u>, 349 F.3d 534, 538 (8th Cir. 2003). As such, transferring officers generally should strive to convey important information likely to aid in the protection of inmates' health and welfare. But, clearly established and specific constitutional requirements defined under this general rule do not support the proposition that an officer is required to second-guess a mental health professional's judgment as to the substantiality of a suicide risk.

Plaintiffs rely primarily on an out-of-circuit case, <u>Cavalieri v. Shepard</u>, 321 F.3d 616, 621–22 (7th Cir. 2003), to argue that Adams is not entitled to qualified immunity. There, the Seventh Circuit affirmed a denial of qualified immunity on allegations that a transferring officer failed to inform the receiving authorities about a suicide risk. Unlike the present case, <u>Cavalieri</u> involved no suggestion that a mental health professional had found the detainee to be non-suicidal. And, material factual distinctions aside, a single case from a neighboring circuit does not serve as "a robust consensus of cases of persuasive authority constituting settled law" for qualified immunity purposes. <u>See</u> <u>Graham</u>, 970 F.3d at 1090.

We reverse the judgment of the district court.

_____