# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3383

_____

Tyrone Scott Cameron

*Plaintiff - Appellant*

v.

City of Des Moines; Dana Wingert, individually and in his official capacity with the City of Des Moines Police Department; Daobandon Meunsaveng, individually and in his official capacity with the City of Des Moines Police Department; Jason Hays, individually and in his official capacity with the City of Des Moines Police Department; Mitchell Lee, individually and in his official capacity with the City of Des Moines Police Department; Ryan Armstrong, individually and in his official capacity with the City of Des Moines Police Department; Ben Carter, individually and in his official capacity with the City of Des Moines Police Department; Jason Halifax, individually and in his official capacity with the City of Des Moines Police Department

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: December 16, 2025
Filed: February 26, 2026

_____

Before GRUENDER, KELLY, and ERICKSON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Tyrone Cameron attempted to flee from City of Des Moines police officers while they were executing a warrant for his arrest for First-Degree Murder. Without issuing a warning, Officer Daobandon Meunsaveng released a canine named Bero to subdue Cameron. Bero bit and held Cameron until officers handcuffed him, at which point Officer Meunsaveng pulled Bero away. Bero held Cameron for roughly fifteen seconds. Cameron sued the City of Des Moines, Officer Meunsaveng, and other officers present during his arrest, bringing constitutional claims under 42 U.S.C. § 1983 and tort claims under Iowa law. The district court granted summary judgment to defendants on all claims. We affirm in part and reverse in part.

## I. Background

On April 8, 2022, City of Des Moines police officers executed an arrest warrant for Cameron for First-Degree Murder, in connection with a fatal shooting that had occurred five days earlier.[1] Cameron had a record of violent crime and had other warrants outstanding. The officers arrived at a two-story house where Cameron had been hiding. A resident allowed some of the officers inside the front of the house. An officer told the resident that the officers had a canine unit coming and that "somebody is going to get bit if you don't be honest with me." Meanwhile, other officers encircled the house to prevent Cameron from escaping. One of those officers was Officer Meunsaveng, who brought with him his canine named Bero. Bero had been trained in how to bite and hold a suspect.

Officer Meunsaveng spotted Cameron on the house's roof attempting to escape. Officer Meunsaveng yelled, "Hey, Tyrone!" and shouted to other officers that Cameron was on the roof. Cameron jumped off the roof, landed, and attempted

---

[1]An Iowa jury later acquitted Cameron of this charge. He was subsequently found guilty in federal court for being a felon in possession of ammunition, in connection with the same shooting. *See United States v. Cameron*, 99 F.4th 432, 434 (8th Cir. 2024).

to run. Seeing this attempt, and without issuing a warning, Officer Meunsaveng released Bero. As Bero ran towards Cameron, Officer Meunsaveng issued a command to Bero to bite and hold him. Roughly five seconds after its release, Bero reached Cameron, who by then had stumbled and fallen. Bero bit and held Cameron on the ground while officers arrived to handcuff him. While Bero held him down, Cameron did not attempt to reach for any weapons or further resist arrest. Cameron had no weapons visible on him, although officers later found a knife in one of his pockets.

Once the officers had handcuffed Cameron, Officer Meunsaveng used a "break stick" to force open Bero's jaw. He also pulled on Bero's collar to physically withdraw Bero from Cameron. It took Officer Meunsaveng roughly two seconds to remove Bero from Cameron. In total, Bero's bite lasted roughly fifteen seconds.

Cameron brought this action against the City of Des Moines (the "City") and several officers under 42 U.S.C. § 1983, raising multiple claims. First, Cameron claims that Officer Meunsaveng used excessive force under the Fourth Amendment by (1) failing to warn before releasing Bero, (2) using Bero to hold Cameron until he was handcuffed, and (3) using physical force instead of verbal commands to remove Bero. Second, Cameron claims that other officers present failed to intervene to prevent this excessive force.[2] Third, Cameron claims that Police Chief Dana Wingert and the City failed to train officers on excessive-force restrictions on canine units. Cameron also brought several common law tort claims against defendants under Iowa state law.[3]

_____

[2]Those officers were defendants Jason Hays, Mitchell Lee, Ryan Armstrong, Ben Carter, and Jason Halifax.

[3]Cameron also alleged that the City maintains unconstitutional policies or customs and that the City is liable under Iowa Code § 351.28, which imposes strict liability on dog owners in certain circumstances for injuries caused by their dogs. On appeal, however, Cameron does not discuss these claims and thus has waived them. *See Meyers v. Starke*, 420 F.3d 738, 743 (8th Cir. 2005) ("To be reviewable,

-3-

Defendants moved for summary judgment, and the district court granted their motion on all of Cameron's claims. The district court concluded that Officer Meunsaveng did not use excessive force, and that, at minimum, Officer Meunsaveng did not violate any clearly established rights. Based on this conclusion, the district court determined that the other officers were not constitutionally obligated to intervene and that Chief Wingert and the City were not liable for a failure to train. The district court then determined that because Officer Meunsaveng had not used excessive force under the Fourth Amendment, Cameron's common law tort claims failed under Iowa law.[4] Cameron appeals.

## II.  Discussion

We review the grant of summary judgment *de novo*, viewing the evidence in the light most favorable to Cameron and drawing all reasonable inferences in his favor. *See Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Graham v. Barnette*, 5 F.4th 872, 881 (8th Cir. 2021).

---

an issue must be presented in the brief with some specificity. Failure to do so can result in waiver.").

[4]The district court also reasoned that, under Iowa law, the officers could not be liable to Cameron for negligence because they had not yet placed Cameron into custody. We note, however, that the officers had Cameron in custody once Bero began biting him. Under Iowa law, "[c]ustody begins when an arrest is made and continues until the defendant is lawfully discharged." *State v. Eads*, 234 N.W.2d 108, 111 (Iowa 1975). "An assertion of authority and purpose to arrest followed by submission of the arrestee constitutes an arrest." *State v. Wing*, 791 N.W.2d 243, 248 (Iowa 2010). Here, those criteria were satisfied once Cameron stopped resisting, which happened once Bero began biting him.

## A. Excessive Force

Cameron claims that Officer Meunsaveng used excessive force by (1) failing to warn before releasing Bero, (2) using Bero to hold him until he was handcuffed, and (3) using physical force instead of verbal commands to remove Bero. We analyze these claims "under the Fourth Amendment and its 'reasonableness' standard," assessing whether Officer Meunsaveng's actions were "'objectively reasonable' in light of the facts and circumstances confronting them . . . ." *See Graham v. Connor*, 490 U.S. 386, 395, 397 (1989).

Officer Meunsaveng has invoked qualified immunity. Therefore, Cameron must show not only that Officer Meunsaveng violated a constitutional right, but that the right was "clearly established" at the time of the violation. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Cameron must either (1) "point to existing circuit precedent that involves sufficiently similar facts to squarely govern the officer's actions such that the officer had notice that his specific use of force was unlawful"; (2) "present a robust consensus of cases of persuasive authority doing the same"; or (3) "demonstrate that a general constitutional rule applied with obvious clarity to the facts at issue." *See Boudoin v. Harsson*, 962 F.3d 1034, 1040 (8th Cir. 2020) (citation modified).

Viewing the evidence in the light most favorable to Cameron and drawing all reasonable inferences in his favor, *see Stair*, 944 F.3d at 709, Cameron has raised a genuine dispute of material fact as to whether Officer Meunsaveng violated a clearly established right by failing to warn before releasing Bero. However, Cameron has not shown a genuine dispute of material fact as to whether Officer Meunsaveng violated a clearly established right by having Bero hold Cameron until he was handcuffed or by using physical force to remove Bero.

### 1. Failing to Warn

A reasonable jury could determine that Officer Meunsaveng acted unreasonably by failing to give Cameron "a warning and opportunity for peaceful surrender" before releasing Bero.[5] *See Kuha v. City of Minnetonka*, 365 F.3d 590, 598 (8th Cir. 2003), *abrogated on other grounds by Szabla v. City of Brooklyn Park*, 486 F.3d 385 (8th Cir. 2007). "[T]he presence or absence of a warning is a critical fact in virtually every excessive force case involving a police dog." *Id.* at 599. Officers are generally required to issue a warning outside of "exceptional cases where a warning is not feasible." *Id.* To illustrate, in rare circumstances, "an officer may forego the warning requirement due to a personal safety risk . . . ." *Adams v. City of Cedar Rapids*, 74 F.4th 935, 940 (8th Cir. 2023).

Defendants argue that Cameron posed a safety risk to officers that justified Officer Meunsaveng's failure to give Cameron a warning and opportunity for peaceful surrender. As defendants explain, Cameron had a record of violent crime and was actively attempting to evade arrest. Further, the officers believed that he was armed and dangerous and had recently committed First-Degree Murder.

We agree that a reasonable officer could believe that Cameron posed a safety risk to officers. But defendants have failed to explain why *issuing a warning* would have created safety risks. The fact that Cameron was dangerous does not necessarily mean that issuing a warning would have made him even more dangerous. In fact, we have previously noted that "generally a warning diminishes the risk of confrontation by increasing the likelihood that a suspect will surrender." *Id.* (citation

---

[5]Defendants suggest that officers had issued a warning to Cameron about Bero when an officer told a resident that there was a canine unit coming who would bite somebody if she was not honest with him. Even assuming that this statement constituted a warning, the evidence here, "viewed favorably to [Cameron], does not establish that other officers' warnings could be heard by [him] to permit an opportunity for peaceful surrender." *See Adams v. City of Cedar Rapids*, 74 F.4th 935, 940 (8th Cir. 2023). The officer's statement therefore does not entitle defendants to summary judgment on Cameron's failure-to-warn claim. *See id.*

modified).  Ordinarily, a jury is best suited to determine whether risks to officer safety justify foregoing the warning requirement, and only in rare circumstances are those risks "so obvious" that they become a legal question.  *Id.*  Defendants have not explained why this is one such rare circumstance.  *See Kuha*, 365 F.3d at 599 ("[W]e see no reason why, in this case, a rational jury would be precluded from finding that the officers could have placed themselves out of harm's way . . . and given a loud verbal warning that a police dog was present and trained to seize by force.").

The warning requirement was clearly established by the time of Cameron's arrest.  As we stated in *Adams*, *Kuha* provided "fair notice" that "the failure to give a warning and an opportunity to surrender violated clearly established law."  74 F.4th at 940.  Defendants have failed to show that this case is an exception to that rule. Cameron has thus raised a genuine dispute of material fact whether Officer Meunsaveng violated a clearly established right by failing to warn before releasing Bero.

## 2.  Using Canine Bero to Hold Cameron

Cameron has failed to raise a genuine dispute of material fact as to whether Officer Meunsaveng acted unreasonably in using Bero to hold Cameron until he was handcuffed.  To assess whether Officer Meunsaveng acted reasonably, we must give "careful attention to the facts and circumstances of [this] particular case, including the severity of the crime at issue, whether [Cameron] pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight."  *See Graham*, 490 U.S. at 396.  We assess reasonableness "as judged from the perspective of a reasonable officer on the scene at the time the force was applied."  *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011).

Considering the totality of the circumstances, it was reasonable for Officer Meunsaveng to use Bero to hold Cameron until he was secured in handcuffs.  To a reasonable officer, Cameron posed an immediate safety threat.  He allegedly had

-7-

committed a violent, severe crime—First-Degree Murder—only five days earlier. He had a lengthy criminal record, was the subject of many other outstanding warrants, and was believed to be armed and dangerous. And although he carried no visible weapons, a reasonable officer could have believed that he had weapons accessible in his pockets, such as the knife that officers later found on him. Cameron points out that he never reached for any weapons and that, once Bero began biting him, he stopped resisting arrest. But just moments before, Cameron had attempted to flee—by jumping off a roof. "[A] reasonable officer could believe that [Cameron's] 'surrender' was a ploy" and that he would fight or flee "once the dog was removed." *See Escobar v. Montee*, 895 F.3d 387, 394 (5th Cir. 2018). Cameron argues that Officer Meunsaveng should have removed Bero once Bero began moving its head and jaws to adjust its bite. These movements, Cameron argues, made Bero's bite unreasonably painful and severe. Under the circumstances, however, the safety risks nonetheless justified using Bero to hold Cameron until he was handcuffed.

Cameron cites only one case from our circuit discussing the reasonableness of a canine bite. And that case, *Kuha*, supports defendants' argument, not Cameron's. In *Kuha*, a canine bite lasting "ten to fifteen seconds" was reasonable under the totality of the circumstances. 365 F.3d at 601. The circumstances in *Kuha* were similar to the circumstances here. To start, the canine bite in *Kuha* lasted for a similar duration to Bero's bite. Further, as in *Kuha*, the officers here were not "siccing a police dog on a manifestly unarmed and compliant suspect." *See id.* Cameron attempts to distinguish *Kuha* by arguing that the officers there needed the canine unit so that they could search surrounding tall grass for accessible weapons. But in both cases, the officers were "reasonably concerned for their safety." *See id. Kuha* thus indicates that it was reasonable for Officer Meunsaveng to use Bero to hold Cameron until he was in handcuffs.

Cameron also cites three cases where our sister circuits denied qualified immunity to officers on excessive force claims arising from particular canine bites. *See Cooper v. Brown*, 844 F.3d 517 (5th Cir. 2016); *Becker v. Elfreich*, 821 F.3d

920 (7th Cir. 2016); *Watkins v. City of Oakland*, 145 F.3d 1087 (9th Cir. 1998). But these cases are hardly applicable to the circumstances here. In *Cooper*, the Fifth Circuit determined that a canine bite lasting "one to two minutes"—far longer than Bero's fifteen-second bite—was unreasonable. *See* 844 F.3d at 521, 524. And there, unlike here, the suspect was arrested for a nonviolent crime and "was not actively resisting arrest or attempting to flee . . . ." *Id.* at 523. Further, "there was no evidence that would have led a reasonable officer to believe [the suspect] was a threat." *Id.* In *Becker*, the Seventh Circuit determined that a bite lasting "a few minutes"—again, far longer than the fifteen-second bite here—was unreasonable, and there, the suspect "had surrendered peacefully and without resistance." *See* 821 F.3d at 924, 927. Only *Watkins* involved a canine bite of a similar duration to Bero's bite. *See* 145 F.3d at 1090 (involving a bite lasting ten to thirty seconds). But *Watkins*, unlike here, involved a suspect who was "obviously helpless," *see id.*, and *Watkins* did not actually explain what circumstances made the bite excessive. *See id.* at 1092-93. We are unpersuaded by Cameron's out-of-circuit cases.

Once officers completed handcuffing Cameron, Officer Meunsaveng removed Bero within roughly two seconds. "At most, one could argue that [Officer Meunsaveng] could have called the dog off a second or two sooner. But that kind of fine-sliced judgment call amid 'tense, uncertain, and rapidly evolving' circumstances just isn't the stuff of a Fourth Amendment violation." *See Ashford v. Raby*, 951 F.3d 798, 804 (6th Cir. 2020) (quoting *Graham*, 490 U.S. at 397). In total, Bero's bite lasted roughly fifteen seconds. Given the totality of the circumstances, including "the short time frame at issue," Officer Meunsaveng acted reasonably in using Bero to hold Cameron until he was handcuffed. *See Kuha*, 365 F.3d at 601.

### 3. Removing Canine Bero

Cameron argues that it was unreasonable for Officer Meunsaveng to remove Bero by pulling on its collar and forcing open its jaw with a break stick, and defendants offer no response to this argument. However, we need not decide

whether Cameron has raised a genuine dispute as to the reasonableness of Officer Meunsaveng's removal technique because Cameron has not shown that Officer Meunsaveng violated a clearly established right by using the technique. *See Pearson*, 555 U.S. at 236 (noting that courts can analyze qualified immunity by first addressing whether an at-issue right was clearly established).

Cameron offers neither "existing circuit precedent" nor "a robust consensus of cases of persuasive authority" to show that Officer Meunsaveng's physical removal technique violated a clearly established right. *See Boudoin*, 962 F.3d at 1040. Indeed, Cameron fails to offer any case discussing reasonable canine removal techniques. And although Cameron rightly points out that his "right to be free from the use of excessive force" was clearly established by the time of his arrest, *see Pennycook*, 641 F.3d at 908, he has not shown that this "general constitutional rule applied with 'obvious clarity'" to prohibit Officer Meunsaveng's physical removal technique. *See Boudoin*, 962 F.3d at 1040. Officer Meunsaveng is thus entitled to qualified immunity on Cameron's claim that his removal technique was unreasonable.

## B.  Failure to Intervene

Cameron claims that the other defendant officers failed to intervene to prevent Officer Meunsaveng's alleged use of excessive force. Cameron alleges that they should have issued a warning once Officer Meunsaveng released Bero and that they should have told Officer Meunsaveng to remove Bero earlier than he did. An officer can be liable for a failure to intervene where the officer (1) "observed or had reason to know that excessive force would be or was being used," and (2) "had both the opportunity and the means to prevent the harm from occurring." *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009). However, "there is no duty to prevent the constitutional use of reasonable force." *McManemy v. Tierney*, 970 F.3d 1034, 1039 (8th Cir. 2020) (emphasis omitted). And where an officer's alleged excessive force did not violate a clearly established right, qualified immunity shields other officers

against a claim that they failed to intervene to prevent that use of force. *See, e.g., Hollingsworth v. City of St. Ann*, 800 F.3d 985, 991 (8th Cir. 2015).

Here, the other defendant officers are not liable for failing to issue a warning once Officer Meunsaveng released Bero. True, one of the other officers saw that Officer Meunsaveng released Bero without first giving Cameron a warning and opportunity for peaceful surrender. But to be liable for a failure to intervene, that officer must also have "had both the opportunity and the means to prevent the [excessive force] from occurring." *Nance*, 586 F.3d at 612. Cameron argues that the other officer could have issued a warning in the roughly five seconds between when Officer Meunsaveng released Bero and when Bero reached Cameron. But the alleged excessive force here was that Officer Meunsaveng released Bero on Cameron without *first* providing a warning and opportunity for peaceful surrender. *See Kuha*, 365 F.3d at 598-99. Cameron fails to explain how simply issuing a warning *after* Bero's release would have prevented this harm.

Nor is any defendant officer liable for failing to tell Officer Meunsaveng to remove Bero as Bero held Cameron. Using Bero to hold Cameron until he was handcuffed did not violate any clearly established right. *See supra* Section II(A)(2). Thus, the other officers are entitled to qualified immunity on this claim. *See Hollingsworth*, 800 F.3d at 991.

### C. Failure to Train

Cameron alleges that Chief Wingert and the City failed to train Officer Meunsaveng on reasonable use of a canine unit. Specifically, Cameron alleges that these defendants failed to ensure that Officer Meunsaveng (1) employed warnings before releasing Bero and (2) reasonably handled Bero during arrests. We address Cameron's claims against each defendant in turn.

### 1. Chief Wingert

To show that Chief Wingert is liable for a failure to train, Cameron must establish that Chief Wingert "(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [Cameron]." *See Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012) (citation modified). To have been deliberately indifferent, Chief Wingert must have "had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *See id.* at 356.

Cameron fails to show that Chief Wingert had notice of a pattern of unconstitutional acts committed by his subordinates. "This rigorous standard requires proof that the supervisor had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right." *Davis v. Buchanan Cnty.*, 11 F.4th 604, 624 (8th Cir. 2021) (citation modified). And that conduct "must be very similar to the conduct giving rise to liability." *Id.* Cameron alleges only one violation of a clearly established right: Officer Meunsaveng's failure to warn before releasing Bero. *See supra* Section II(A). And Cameron offers no evidence that Officer Meunsaveng, or any of Chief Wingert's other subordinates, had ever previously failed to issue a warning before releasing a canine unit. Because Cameron's failure-to-train claim against Chief Wingert fails this threshold inquiry, we need not discuss the remaining elements of this claim.

### 2. The City of Des Moines

To show that the City is liable for a failure to train, Cameron must show (1) the City's officer-training practices are inadequate; (2) the City was deliberately indifferent to the rights of others in adopting those practices and its failure to train was a result of deliberate and conscious choices it made; and (3) the City's training deficiencies caused Cameron's constitutional violation. *See Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013). To have been deliberately indifferent, the City

must have "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996).

The City is not liable for failing to train Officer Meunsaveng on the warning requirement. Even assuming Cameron is correct that the City's training on the warning requirement was inadequate, Cameron does not discuss how this inadequacy was the result of the City's "deliberate and conscious choices." *See Ulrich*, 715 F.3d at 1061. Indeed, Cameron does not even mention this component of the legal test for a municipal failure-to-train claim.

Nor is the City liable for failing to ensure that Officer Meunsaveng otherwise reasonably used Bero. "[A] municipal policymaker cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established." *Szabla*, 486 F.3d at 393. Aside from his failure-to-warn claim, Cameron has not raised a genuine dispute of material fact as to whether Officer Meunsaveng's conduct violated a clearly established right. *See supra* Section II(A)(2)-(3). Thus, Cameron's failure-to-train claim against the City fails.

## III. Conclusion

Accordingly, we reverse the district court's grant of summary judgment to Officer Meunsaveng on Cameron's failure-to-warn claim. We otherwise affirm the district court's grant of summary judgment to defendants on Cameron's 42 U.S.C. § 1983 claims.

Because the district court dismissed the Iowa common law tort claims on the ground that Cameron could not show excessive force under the Fourth Amendment, we remand those claims to the district court for further consideration consistent with this opinion. *See MPAY Inc. v. Erie Custom Comput. Applications, Inc.,* 970 F.3d 1010, 1021 (8th Cir. 2020) ("Remand is ordinarily the appropriate course of action

-13-

when it would be beneficial for the district court to consider an argument in the first instance." (citation modified)).

_____