# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2702

_____

Hal W. Stanley and Michelle Stanley, Individually and as Parents and Legal Guardians

*Plaintiffs - Appellees*

v.

Katherine Finnegan

*Defendant - Appellant*

Garland County, et al.

*Defendant*s

_____

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs

_____

Submitted: April 10, 2018
Filed: August 10, 2018

_____

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

On January 12, 2015, child abuse investigators removed seven minor children from the private home of their parents, Hal and Michelle Stanley, in Hot Springs, Arkansas. After extensive state administrative and judicial child abuse proceedings,

the Stanleys filed this § 1983 action, individually and on behalf of six of their children, against the Arkansas Department of Human Services (DHS); Garland County; and numerous employees of the State and Garland County in their individual and official capacities. The forty-seven page Complaint asserted a variety of claims against numerous defendants, including multiple claims against Katherine Finnegan, a civilian investigator for the Crimes Against Children Division of the Arkansas State Police, in her individual and official capacities. Three individual defendants, including Finnegan, moved to dismiss plaintiffs' individual capacity claims based on qualified immunity. The district court[1] granted these defendants qualified immunity on all claims except one, the claim that Finnegan removed the Stanleys' minor children from their home without an adequate basis. Finnegan appeals. An interlocutory order denying a motion to dismiss based on qualified immunity is immediately appealable. Ashcroft v. Iqbal, 556 U.S. 662, 673 (2009). Reviewing the denial of qualified immunity *de novo*, we affirm. Bradford v. Huckabee, 394 F.3d 1012, 1015 (8th Cir. 2005) (standard of review).

## I. Background.

Our review of the denial of a Rule 12(b)(6) motion to dismiss based on qualified immunity is limited to the facts alleged in the Stanleys' lengthy Complaint, which we accept as true and view most favorably to the plaintiffs. Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1013 (8th Cir. 2013).

The Complaint alleges that Hal and Michelle are parents who chose to raise and home-educate their children according to Christian beliefs and with limited access outside of the home. In 2014, son Jonathan, then sixteen, developed a desire to attend public school and "not contribute and be a part of his family such as it was." His

---

[1]The Honorable P.K. Holmes, III, Chief Judge of the United States District Court for the Western District of Arkansas.

parents disapproved. Jonathan rebelled, convincing an adult friend to report to the DHS Division of Children and Family Services that the Stanley children were not adequately clothed and one was being abused. In December 2014, a DHS investigator visited the Stanley home and "unsubstantiated" the report.

Undeterred, Jonathan then accused his parents of "poisoning, burning, striking, and bruising the children," neglecting the children's education, and providing inadequate food and healthcare. He alleged to adult friends that Hal caused the children to become ill by forcing them to drink a solution called "Miracle Mineral Solution" (MMS), a product Hal used in his greenhouse, and threatened to pipe MMS through the house vents. Jonathan provided what he said was a sample of MMS to an adult friend who turned it over to the Garland County Sheriff's Department. Sergeant Mike Wright interviewed Christopher Stanley, an adult child, on January 9, 2015, who said his only knowledge that Hal had pumped MMS vapors through the home's school room came from Jonathan. Sergeant Wright consulted Dr. Teresa Esquivel of the Arkansas Children's Hospital who conducted an internet search and reported that MMS was dangerous. Based on this information, Sergeant Wright obtained a warrant to search the Stanley home for MMS and other dangerous chemical substances. Wright's warrant affidavit stated that "the Arkansas State Police Crimes Against Children Division . . . intends to remove the children from the home to have them examined by a medical doctor."

At approximately 4:30 p.m. on January 12, some thirty government agents including Finnegan conducted a five-hour warrant search of the Stanley home. Seven minor children including Jonathan were present. Their parents were ordered to remain on the front porch during the search and were not allowed to speak with the children. Each child was interviewed by Finnegan. Jonathan repeated his accusations of abuse and neglect and made numerous additional accusations. Fourteen-year-old V.S. stated that Jonathan and his adult friends "convinced her how bad things were."

During the investigation, each child was examined in an ambulance by a doctor who found each child healthy and showing no symptom of exposure to a toxic substance. At the conclusion of the investigation, the DHS Division of Children and Family Services representatives concluded the children were happy, healthy, and in no danger and declined to take them into DHS custody. However, the Sheriff's Department and its Crimes Against Children Division investigator, Finnegan, credited Jonathan's accusations. Sergeant Wright removed the children "at the insistence of Inv. Finnegan," leaving DHS no choice but to accept custody. The children were sent to two different cities, two hours away from home, and enrolled in public school. Contested proceedings ensued and continued for twenty-one months. Finnegan made findings of abuse and neglect that were overturned on appeal.

The Complaint's First Claim for Relief includes a § 1983 claim seeking to hold Finnegan liable for compensatory and punitive damages for "removing, detaining, and continuing to detain [six minor children] from the care, custody, and control of their parents . . . without proper or just cause and/or authority" in violation of plaintiffs' First, Fourth, and Fourteenth Amendment Rights. In briefing the broader motion to dismiss to the district court, the parties did not separately address whether Finnegan is entitled to qualified immunity on this claim. The district court denied Finnegan's motion to dismiss the claim on the basis of qualified immunity:

> [I]t was clearly established at the time of the seizure that at least a reasonable suspicion of child abuse was required before removing children from the home. . . . Because the allegations indicate that Finnegan ordered the Stanley children removed despite evidence and DHS recommendations to the contrary, Finnegan has not established that she had a reasonable suspicion of child abuse.[2]

---

[2]On the merits, to defeat a qualified immunity defense, plaintiff has the burden of proving that defendant's conduct violated a clearly established constitutional right. See Hess v. Ables, 714 F.3d 1048, 1051 (8th Cir. 2013). But at the Rule 12(b)(6) stage, the issue is whether plaintiff "pleads factual content that allows the court to

## II. Discussion.

"Qualified immunity protects public officials from § 1983 damage actions if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Bradford, 394 F.3d at 1015, citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To determine whether a defendant is entitled to dismissal on the basis of qualified immunity, we consider "(1) whether the official's conduct violated a constitutional right; and (2) whether the violated right was clearly established." Manning v. Cotton, 862 F.3d 663, 668 (8th Cir. 2017). A complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To prevail at this stage of the proceedings, Finnegan must be entitled to qualified immunity "on the face of the complaint." Bradford, 394 F.3d at 1015.

As the district court recognized, it is clearly established that the removal of children from their parents' custody violates a constitutional right if the removal occurs without reasonable suspicion of child abuse. See Heartland Acad. Cmty. Church v. Waddle, 427 F.3d 525, 534 (8th Cir. 2005); Abdouch v. Burger, 426 F.3d 982, 987 (8th Cir. 2005). "Parents have a liberty interest in the care, custody, and management of their children," but this interest is "limited by the state's compelling interest in protecting a child . . . ." Swipies v. Kofka, 348 F.3d 701, 703 (8th Cir. 2003). To balance these competing interests, we have adopted the rule that, "when a state official pursuing a child abuse investigation takes an action which would otherwise unconstitutionally disrupt familial integrity, he or she is entitled to qualified immunity, if such action is properly founded upon a reasonable suspicion of child abuse." Id., citing Manzano v. S.D. Dep't of Soc. Servs., 60 F.3d 505, 510-

---

draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Thus, the district court's statement that Finnegan "has not established" the defense, though imprecise, was not error.

11 (8th Cir. 1995). Thus, the issue is whether the allegations in the Stanleys' Complaint, taken as true and viewed in their favor, state a plausible claim that Finnegan lacked reasonable suspicion of child abuse when she participated in removing the Stanleys' minor children from the home and custody of their parents.

Finnegan first argues that the Stanleys' claim is not plausible because, under the Arkansas Child Maltreatment Act, only a law enforcement officer, a juvenile court judge, or a designated DHS employee has authority to take a child into protective custody. At the Rule 12(b)(6) stage, this argument is without merit. The Complaint alleges that Finnegan, acting under color of state law, entered the home to execute a search warrant, separated the Stanleys from their children, questioned the children, and had them taken to the ambulance for a doctor's examination. At the end of this process, "all seven (7) of the Stanley children were removed by Sgt. Mike Wright at the insistence of Inv. Finnegan." These facts plausibly allege that Finnegan may be liable if the children were removed without reasonable suspicion of child abuse.

Finnegan next argues that a child maltreatment investigator *cannot* be liable for "making recommendations based on investigative findings," citing Manzano, 60 F.3d at 510-11. This contention, too, is without merit. In Manzano, a mother informed a county sheriff's investigator her child had made statements that the child's father sexually abused her. The investigator advised the mother to get a temporary protection order to keep the father away from the child. 60 F.3d at 507. In reversing the denial of summary judgment based on qualified immunity, we explained: "we do not think that [the investigator] had to have a reasonable suspicion of child abuse before advising [the mother] of her option to file a petition for a temporary protection order." Id. at 512. This decision does not come close to supporting the assertion that an investigator cannot be liable for *causing* a child's forcible removal.

The issue in this case is properly framed by cases establishing the Fourth Amendment standard that applies to police officers and investigators in making

arrests and other seizures. The standard is well established in this circuit. Cause or suspicion warranting a seizure must exist at the moment of the seizure. Ripson v. Alles, 21 F.3d 805, 808 (8th Cir. 1994). "An officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999); see Ross v. City of Jackson, No. 17-1390, 2018 WL 3581468, at *4 (8th Cir. July 26, 2018); Womack v. City of Bellefontaine Neighbors, 193 F.3d 1028, 1031 (8th Cir. 1999).

Here, Finnegan, Sergeant Wright, and the other investigators went to the Stanleys' home based on bizarre accusations by teenager Jonathan that, if true, gave reason to believe Jonathan's minor siblings were in danger of continuing child abuse. But a month earlier, another investigator had "unsubstantiated" Jonathan's earlier allegations, and proper research would have shown, as an email from a DHS supervisor attached to the Complaint reported the day after the warrant search, that "MMS is legal and promoted as a cure for the simple cold to acne to the flu and to other more serious diseases." Thus, although the investigators went to the home with the intent to remove the children, this was a child abuse situation that cried out for investigation and confirmation. After five hours, the five youngest children had been interviewed; they denied abuse in the home and said they loved their parents; a doctor had medically examined each child and concluded they were healthy and showed no signs of abuse or symptoms of poisoning; and the DHS investigators had concluded that the home was safe and the children were happy, healthy, in no danger, and should not be taken into custody. Yet, Sergeant Wright, at the "insistence" of Finnegan, ordered the children removed, compelling DHS to take custody and beginning a twenty-one month ordeal for the family.

As the district court concluded, it was clearly established at the time Finnegan acted that reasonable suspicion was required to remove the Stanley children from their home and their parents' custody. Like probable cause to arrest, reasonable

suspicion to seize children must exist at the moment of the seizure, and an official is not free to disregard plainly exculpatory evidence when it undermines substantial inculpatory evidence that reasonable suspicion exists. The Complaint raises a fair inference that Finnegan was aware of the substantial exculpatory evidence developed during the five-hour investigation before Finnegan and Sergeant Wright made the decision to remove. The Complaint also raises the inference that the decision to remove was motivated by disagreement with the Stanleys' decision to home-school their children in an isolated environment. Though perhaps unlikely, this theory is not implausible. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556. The factually supported claim against Finnegan at issue on appeal lies well within that liberal pleading standard and therefore survives a Rule 12(b)(6) motion to dismiss based on qualified immunity.

Finnegan argues that our decision in Myers v. Morris, 810 F.2d 1437 (8th Cir. 1987), is contrary, controlling authority. We disagree. Myers is distinguishable on multiple grounds -- the grant of qualified immunity was made on a summary judgment record; at least twelve children -- many unrelated to one another -- made allegations of sexual abuse against parents and other adults that therapists, guardians, prosecutors, and investigators found credible; and the governing legal standard for removal -- reasonable suspicion of child abuse -- was not clearly established at that time. Id. at 1441-43, 1454, 1460, 1462-63. Here, whether there was reasonable suspicion of child abuse warranting removal must be determined by analyzing the totality of the circumstances at the time of the removal. Kuehl, 173 F.3d at 650.

We affirm that part of the district court's Order dated June 20, 2017, denying the motion to dismiss the claim that Finnegan removed plaintiffs' minor children from their home without an adequate basis, and the Order dated July 5, 2017, denying Finnegan's motion for reconsideration.

_____