MELLOY, Circuit Judge.
*1021 Arkansas state prisoner Adam Lane sued his former parole officer, Adam Nading, and a Fort Smith police officer, Joseph Boyd, (collectively, the "officers") under 42 U.S.C. § 1983 for allegedly violating his Fourth Amendment right to be free from unreasonable searches and seizures. He claimed that the officers failed to knock and announce their presence before entering his hotel room, seizing narcotics and a gun, and arresting him while he was on parole. The district court denied Nading's motion for judgment on the pleadings and Boyd's motion to dismiss on the grounds that the officers were not entitled to qualified immunity. The officers appeal. Having jurisdiction under 28 U.S.C. § 1291, we reverse.
I. Background
The following facts are taken from Lane's amended complaint and the documents he references therein-namely, his original complaint and the Arkansas Supreme Court opinion upholding his conviction. We accept these facts as true and view them in the light most favorable to Lane. See Stanley v. Finnegan, 899 F.3d 623, 625 (8th Cir. 2018) (setting forth the standard of review on "[a]n interlocutory order denying a motion to dismiss based on qualified immunity").
Lane was on parole in Arkansas in January 2015. As part of his conditions of release from the Arkansas Department of Corrections, Lane consented to warrantless searches and seizures of his "person, place of residence, and motor vehicles." Lane v. State, 2017 Ark. 34, 513 S.W.3d 230, 233 (2017). Lane appeared for his initial parole intake with Nading but subsequently failed to report, a violation of his release conditions.
That same month, Lane committed another violation of his release conditions: He began staying at a hotel in Fort Smith. The hotel was not his primary residence, and he did not receive prior authorization from Nading before staying there. Nading learned that Lane was staying at the hotel and went with Boyd to find Lane.
The officers enlisted a hotel worker to open Lane's door for them. Without knocking and announcing their presence, they entered the room. Inside, they found Lane asleep with a female companion. They also found drugs and a handgun. The officers arrested Lane, who signed an affidavit declaring that the drugs were his.
Lane was convicted in state court of multiple drug charges and simultaneous possession of a firearm. He received a sentence of 70 years' imprisonment. He appealed to the Arkansas Supreme Court, which affirmed. See id. at 237. Relevant to this case, the Arkansas Supreme Court held that the officers violated Lane's Fourth Amendment right to be free from unreasonable searches and seizures because they did not knock and announce their presence before entering the hotel room.[1]
Lane subsequently brought this action under 42 U.S.C. § 1983. After Lane amended his complaint, the officers filed their answer. Along with the answer, Nading filed a motion for judgment on the pleadings, and Boyd filed a motion to dismiss. Both argued that they: (1) were immune from liability in their official capacities under the doctrine of sovereign immunity; and (2) were immune from liability in their individual capacities under *1022 the doctrine of qualified immunity because they had not violated any of Lane's clearly established constitutional rights.
The district court granted the officers' motions in part and denied them in part. Regarding the official-capacity claims, the district court held that the doctrine of sovereign immunity applied, so the officers could not be sued. Regarding the individual-capacity claims, the district court said that "there appear[ed] to be a consensus of both binding and persuasive federal law prior to January 27, 2015, that a failure to knock and announce is a violation of the Fourth Amendment absent a reasonable suspicion of exigency or futility." The district court pointed to a Seventh Circuit case, Green v. Butler, 420 F.3d 689 (7th Cir. 2005), and said that Green "held that a failure to knock and announce is not waived when a parolee has signed an agreement permitting warrantless searches." Finally, the district court said that the officers had "conceded that there was no exigency." The district court determined "that [the officers'] actions were unconstitutional." "[W]ithout sufficient information" to determine at that time whether the officers' actions on the day of the search "were those of reasonable officers such that they are entitled to qualified immunity," the district court declined to grant the officer's motions on Lane's individual-capacity claims and allowed the case to proceed. The officers timely appealed.
II. Discussion
The question presented is whether the district court erred in denying the officers qualified immunity. We review both the denial of a motion to dismiss and a motion for judgment on the pleadings de novo. See Kiesling v. Holladay, 859 F.3d 529, 533 (8th Cir. 2017) (motion to dismiss); Prater v. Dahm, 89 F.3d 538, 540 (8th Cir. 1996) (motion for judgment on the pleadings). We reverse if the officers are "entitled to qualified immunity on the face of the complaint." Kiesling, 859 F.3d at 533 (quoting Bradford v. Huckabee, 394 F.3d 1012, 1015 (8th Cir. 2005) ).
The "officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.' " District of Columbia v. Wesby, --- U.S. ----, 138 S. Ct. 577, 589, 199 L.Ed.2d 453 (2018) (citation omitted). To be "clearly established," the law must be "sufficiently clear that every reasonable official would understand what he is doing is unlawful." Id. (internal quotation marks and citation omitted). Clearly established law is "dictated by controlling authority or a robust consensus of cases of persuasive authority." Id. at 589-90 (internal quotation marks and citation omitted). "[P]recedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." Id. at 590. "It is not enough that the rule is suggested by then-existent precedent." Id. The "clearly established" standard, therefore, requires that a particular rule's contours be well defined at a "high 'degree of specificity.' " Id. (citation omitted). Courts should not "define clearly established law at a high level of generality" but should "identify a case where an officer acting under similar circumstances ... was held to have violated the Fourth Amendment." Id. (citation omitted). The case need not be "directly on point," but should place the lawfulness of the officer's conduct "beyond debate." Id. (citation omitted).
Given the governing law, we hold that the officers are entitled to qualified immunity on the face of the complaint. Even assuming that the officers violated the Fourth Amendment by failing to knock *1023 and announce their presence before entering Lane's dwelling, it was not clearly established in January 2015 that failing to knock and announce before entering the dwelling of a parolee was unlawful. That is because neither the Arkansas Supreme Court, this Court, nor the U.S. Supreme Court had spoken on the specific issue of whether the knock-and-announce requirement applies to parolees. Moreover, there existed no "robust consensus of cases of persuasive authority" addressing the issue at the time the officers entered Lane's dwelling. Id. at 589-90.
Lane essentially argues that a robust consensus of persuasive authority had established by January 2015 that the knock-and-announce requirement applies to parolees. To support his argument, he cites the Seventh Circuit's Green v. Butler decision,[2] a pair of district-court decisions,[3] and an intermediate appellate-court decision out of California.[4] We disagree. It is true that the cases Lane cites generally hold that an officer must knock and announce his presence before entering a parolee's dwelling. However, we do not consider a consensus based on the decision of a single circuit and a handful of lower courts to be "robust." Wesby, 138 S. Ct. at 589 ; see Jacobson v. McCormick, 763 F.3d 914, 918 (8th Cir. 2014) (concluding that "two decisions from other circuits did not place [an] issue beyond debate" in the absence of controlling authority); Turner v. Arkansas Ins. Dep't, 297 F.3d 751, 759 (8th Cir. 2002) ("[T]he fact that two circuit cases and fifteen district court cases directly support a proposition and the Supreme Court implicitly supports that same position is sufficient to demonstrate that the law was 'clearly established' ...."); see also Sauers v. Borough of Nesquehoning, 905 F.3d 711, 722 (3d Cir. 2018) (concluding that a single circuit's decision did not "amount[ ] to the robust consensus of cases of persuasive authority in the Court of Appeals that we have held necessary to clearly establish a right in the absence of controlling precedent" (internal quotation marks and citation omitted)); McClendon v. City of Columbia, 305 F.3d 314, 329-33 (5th Cir. 2002) (en banc) ("[T]he mere fact that a large number of courts [six circuits] had recognized the existence of a right to be free from state-created danger in some circumstances ... is insufficient to clearly establish the unlawfulness of [the officer's] actions.").
Furthermore, the U.S. Supreme Court has arguably called into question the extent to which a parolee enjoys Fourth Amendment protections commensurate in scope with those of non-parolees. In its 2006 Samson v. California decision, the Court held that "the Fourth Amendment does not prohibit a police officer *1024 from conducting a suspicionless search of a parolee." 547 U.S. 843, 857, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006). The Court explained that "parole is an established variation on imprisonment of convicted criminals," id. at 850, 126 S.Ct. 2193 (citation omitted), so parolees "have severely diminished expectations of privacy," id. at 852, 126 S.Ct. 2193. In a situation where, like here, a parolee is released on the condition that he must "submit to suspicionless searches by a parole officer or other peace officer 'at any time' " and is "unambiguously" made aware of the condition, he lacks "an expectation of privacy that society would recognize as legitimate." Id. (citation omitted). By contrast, the State has "substantial" and "overwhelming" interests in "supervising parolees because 'parolees ... are more likely to commit future criminal offenses.' " Id. at 853, 126 S.Ct. 2193 (quoting Pennsylvania Bd. of Probation and Parole v. Scott, 524 U.S. 357, 365, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) ). The State also has "interests in reducing recidivism and thereby promoting reintegration and positive citizenship among" parolees that "warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." Id.
While we recognize that Samson does not address the issue of whether the knock-and-announce rule applies to parolees, it certainly stands for the proposition that parolees may be treated differently than non-parolees for some Fourth Amendment purposes. Given that proposition and the fact that the Supreme Court decided Samson after the Seventh Circuit decided Green, we hold it would not have been clear to every reasonable officer in the defendant officers' positions that failing to knock and announce his presence before entering and searching Lane's hotel room violated the Fourth Amendment. Cf. Wesby, 138 S. Ct. at 589 (stating that to be "clearly established," the law must be "sufficiently clear that every reasonable official would understand what he is doing is unlawful"). Because the law was not clear, the officers are entitled to qualified immunity.
III. Conclusion
Accordingly, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

The Arkansas Supreme Court nevertheless extended the rule set forth in Hudson v. Michigan, 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006), and decided not to apply the exclusionary rule to the evidence the officers seized. Lane, 513 S.W.3d at 235-36.

See 420 F.3d at 699 (holding that "there is no blanket exception to the [knock-and-announce] requirement for parolees absent exigency or futility" and as such an officer is not excused from the requirement when entering a parolee's home).

See Portnoy v. City of Davis, 663 F. Supp. 2d 949, 957 (E.D. Cal. 2009) (relying on Green for the proposition that "[a] parole or probation search does not permit an exception to the knock and announce requirement unless there are exigent circumstances or futility"); United States v. Musa, 288 F. Supp. 2d 1205, 1208 (D. Kan. 2003) (rejecting an argument that the knock-and-announce rule did not apply to parolees because the government had not cited, nor had the district court found, "cases that extend a probationer's diminished expectation of privacy to elimination of the knock and announce requirement"), rev'd on other grounds, 401 F.3d 1208 (10th Cir. 2005).

See People v. Montenegro, 173 Cal.App.3d 983, 219 Cal. Rptr. 331, 334 (1985) (holding that officers must comply with state statutory knock-and-announce requirements when searching a parolee's dwelling).