# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-2161
_____

L.G., through her parent and Next Friend, M.G.

*Plaintiff - Appellee*

v.

Columbia Public Schools; Tim Baker, individually, and as Assistant Principal of
Rock Bridge High School; City of Columbia Missouri

*Defendants*

Keisha Edwards, individually, and as a police resource officer at Rock Bridge
High School

*Defendant - Appellant*

John Dye, individually, and as a police officer for the City of Columbia, formerly
known as John Doe, I; Bradley Wolf, individually, and as a police officer for the
City of Columbia, formerly known as John Doe, II

*Defendants*
_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City
_____

Submitted: February 16, 2021
Filed: March 18, 2021
_____

Before SMITH, Chief Judge, ARNOLD and STRAS, Circuit Judges.

_____

ARNOLD, Circuit Judge.

After police officers interrogated a student whom we will call L.G. at her high school, she sued them, claiming, among other things, that they had unconstitutionally seized her. *See* 42 U.S.C. § 1983. School Resource Officer Keisha Edwards, who brought L.G. to the interrogating officers, moved to dismiss the complaint on the ground of qualified immunity. When the district court denied her motion, Edwards filed this interlocutory appeal. We reverse and remand.

We take the facts alleged in the complaint as true at this stage in the proceedings. *See Lewis v. City of St. Louis*, 932 F.3d 646, 648 (8th Cir. 2019). According to her complaint, L.G. was a sixteen-year-old high school student who was summoned to the school's office from her classroom. When she arrived at the office, Edwards informed L.G. that the police were there to question her and took her to a room where two other officers were waiting. Once L.G. entered the room, Edwards left her alone with the officers and closed the door. L.G. alleges that the two officers interrogated her for ten to twenty minutes about a sexual assault that had occurred at the house of another student who happened to share L.G.'s first name. Her complaint asserts that she "became increasingly distraught during the interrogation and started to shake," and afterward struggled with "extreme anxiety" and deteriorated mental health.

In concluding that Edwards was not entitled to qualified immunity, the district court held that Edwards had seized L.G. because "it is reasonable to infer that a minor student who was directed not to attend class so that she could be questioned by police officers, and who was then left alone with those two officers, would not have felt free

-2-

to ignore Edward[s]'s directions." In addition, the court concluded that L.G.'s seizure was unreasonable, even if Edwards did not question L.G. and had good reason to close the door to the room where L.G. was questioned. The district court also held that the right of citizens not to be arrested without probable cause was clearly established, and that it "was well established at the time of this incident" that the right protected students in searches initiated by police officers. And so it denied the motion to dismiss.

"We review the denial of a motion to dismiss based on qualified immunity de novo." *Lewis*, 932 F.3d at 649. Though interlocutory orders are ordinarily not appealable, a defendant may immediately appeal an order denying a motion to dismiss based on qualified immunity. *See Stanley v. Finnegan*, 899 F.3d 623, 625 (8th Cir. 2018). Qualified immunity generally protects public officials from § 1983 lawsuits where the officials' conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 626–27. We often describe the resolution of a qualified immunity issue as involving two questions—whether the official's conduct violated a constitutional or statutory right, and whether that right was clearly established. *Id.* at 627. We may take up either question first, *see Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (en banc), and in this case we opt to consider whether any right violated here was clearly established, a matter that L.G. bears the burden to show. *See Lewis*, 932 F.3d at 649.

We've identified three ways in which a plaintiff can show that law is clearly established. She may identify existing circuit precedent involving sufficiently similar facts that squarely governs the situation. Or a plaintiff may point to "a robust consensus of cases of persuasive authority" establishing that the facts of her case make out a violation of clearly established right. Finally, a plaintiff may show, in rare instances, that a general constitutional rule applies with "obvious clarity" to the facts at issue and carries the day for her. *See Boudoin v. Harsson*, 962 F.3d 1034, 1040 (8th Cir. 2020); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). The

principle at the heart of these approaches is that state actors are liable only for transgressing bright lines, not for making bad guesses in gray areas. *Boudoin*, 962 F.3d at 1040.

We first consider whether existing circuit precedent squarely governs this case. The district court seemed to think so, but we disagree. In holding that Edwards had violated L.G.'s clearly established rights, the district court, relying on *Stoner v. Watlingten*, 735 F.3d 799, 804 (8th Cir. 2013), explained that it is clearly established that the Fourth Amendment protects the right not to be arrested without probable cause. That is certainly true in a general sense. But the Supreme Court has frequently cautioned lower courts of late not to define rights at issue "at a high level of generality" because that "avoids the crucial question whether the official acted reasonably in the particular circumstances." *See, e.g.*, *Wesby*, 138 S. Ct. at 590. The right must be described with a "high degree of specificity" to take into account the particular circumstances that the officer faced. *Id.* Specificity is "especially important in the Fourth Amendment context." *Id.*

Mindful of the Court's directive to define rights with specificity, we conclude that the district court minimized two features of this case that serve to distinguish it from *Stoner* and that could have significantly influenced a reasonable officer in Edwards's position. First, her involvement in the alleged seizure was relatively minimal and ministerial. Unlike the two officers who questioned L.G., Edwards merely escorted L.G. to a room and closed a door. Though we agree with the district court that the simple "fact that Edwards did not herself question L.G. does not mean that she cannot be sued for unconstitutional seizure," we do believe that her nominal role in the incident could well affect whether a reasonable officer in her position would think that she, as opposed to the other officers, had seized L.G. We point out, moreover, that many of the circumstances we look for to determine whether a seizure occurred were not alleged to be present while Edwards interacted with L.G. For example, the complaint does not allege that Edwards positioned herself to limit L.G.'s

-4-

movements, displayed a weapon, touched L.G., used language or tone indicating compliance was necessary, or retained L.G.'s property. *See Oglesby v. Lesan*, 929 F.3d 526, 532–33 (8th Cir. 2019). Though it's possible Edwards seized L.G., we are unwilling to say based on Edwards's incidental role and these other circumstances that every reasonable officer in Edwards's position would have known that she was doing so.

There is another distinguishing feature of this case. While it is generally true (as the district court observed) that police officers may not arrest someone without probable cause, that general truth doesn't provide much guidance to an officer in the public-school setting. Courts have recognized that, though the Fourth Amendment protects students in public schools, "those rights are different in public schools than elsewhere." *See Burlison v. Springfield Pub. Sch.*, 708 F.3d 1034, 1039 (8th Cir. 2013). In fact, "students have a lesser expectation of privacy than members of the population generally." *Id.* So actions outside the schoolhouse that clearly violate the Constitution do not necessarily do so inside it.

The district court attempted to account for the school setting when it noted that it was well established that the Fourth Amendment protects public-school students from police-initiated searches. But that explanation does not signal an appreciation for how the school setting influences Fourth Amendment determinations. Even though students have some Fourth Amendment protection, an officer in Edwards's situation would not know, without more guidance, whether her escorting L.G. to a room with other officers and closing a door constitutes a seizure. We have no doubt that L.G. could reasonably have not felt free to leave and go about her business, which is the usual matter courts focus on to determine if a seizure had occurred. *See Kaupp v. Texas*, 538 U.S. 626, 629 (2003) (per curiam). But we suspect students rarely feel otherwise while in school, where their attendance is compulsory. As another circuit once remarked with respect to students, "Teachers and administrators control their movements from the moment they arrive at school; for example, students

cannot simply walk out of a classroom. Nor can they walk out of a principal's or vice-principal's office in the middle of any official conference," including one initiated by police. *See Milligan v. City of Slidell*, 226 F.3d 652, 656 (5th Cir. 2000). Something more is needed in this setting to determine at what point a student has been unreasonably seized for constitutional purposes.

We respectfully disagree with the district court that it was clearly established that the school setting makes no difference for Fourth Amendment purposes when the seizure occurs at the behest of police. In support of its view, the district court cited some district court opinions from Minnesota and Florida as well as our opinion in *Cason v. Cook*, 810 F.2d 188 (8th Cir. 1987). In *Cason*, we considered whether a search performed at a school without a warrant violated the Fourth Amendment. We held it did not, but along the way we pointed out that "[t]here is no evidence to support the proposition that the activities were at *the behest of* a law enforcement agency." *Id.* at 191 (emphasis in original). From that, the district court seemed to infer that the school setting doesn't matter for officer-initiated searches. Perhaps so. But an equally reasonable inference is that the *Cason* court was merely noting that an officer-initiated search would present a closer question than the case it actually confronted. The crucial point is that *Cason* provided only a hint, rather than a holding, that the school setting doesn't matter in cases involving officer-initiated searches. Hints do not create bright-line rules. "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 138 S. Ct. at 590.

Given Edwards's minimal involvement and the public-school setting, we do not think existing circuit precedent, such as *Stoner* and *Cason*, would have alerted every reasonable officer in Edwards's position that she was violating L.G.'s constitutional rights.

-6-

We turn next to whether L.G. has successfully demonstrated a robust consensus of persuasive authority that created a clearly established right. L.G. invokes an opinion from the Seventh Circuit, *Doe v. Heck*, 327 F.3d 492 (7th Cir. 2003), an earlier opinion from the Seventh Circuit on which *Doe* relied but that did not involve the school setting, *Brokaw v. Mercer Cty.*, 235 F.3d 1000 (7th Cir. 2000), and a Minnesota district court opinion, *Thomas v. Barze*, 57 F. Supp. 3d 1040 (D. Minn. 2014). The district court supplied some additional cases from federal district courts and state intermediate appellate courts that it believed were relevant.

Even if these cases support L.G.'s position, which is a matter on which it is not necessary to pass, this lineup of authorities is insufficient to establish a robust consensus. "[W]e do not consider a consensus based on the decision of a single circuit and a handful of lower courts to be 'robust.'" *Lane v. Nading*, 927 F.3d 1018, 1023 (8th Cir. 2019). So we don't think they would have provided Edwards fair notice that she was violating L.G.'s rights.

Finally, this is not the rare case where a general constitutional rule applies with "obvious clarity." By merely escorting a student to a room containing two officers and closing the interrogation-room door, it's hard to imagine that Edwards was transgressing a bright line as opposed, at most, to making a bad guess in a gray area. Perhaps Edwards should have acted differently, but we cannot say that no reasonable officer would have done the same thing in the circumstances. The Fifth Circuit in *Milligan* confronted similar circumstances. There, officers questioned students for ten to fifteen minutes about fighting that had occurred, and was allegedly going to occur again, outside of school hours. 226 F.3d at 653. That court held that the officers did not violate the Constitution when they summoned the students from class to question them. *Id.* at 656. Though some factual distinctions can be drawn between *Milligan* and our case, *Milligan* supports our conclusion that the answers to Fourth Amendment questions in cases like these are not so obvious as to put an officer in

Edwards's situation on notice that her actions would violate L.G.'s constitutional rights.

In short, we do not think the law clearly established that Edwards's relatively minimal actions in a school setting amounted to an unreasonable seizure of L.G.

We therefore reverse the district court's order rejecting Edwards's request for qualified immunity and remand with directions that the district court dismiss L.G.'s § 1983 claim against Edwards.

_____