# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2493
_____

Billie Jo Hovick; Larry Jon Hovick

*Plaintiffs - Appellants*

v.

Darci Patterson; Halicia Brown; Kristin Walker

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: January 12, 2022
Filed: June 16, 2022

_____

Before SMITH, Chief Judge, WOLLMAN and ERICKSON, Circuit Judges.

_____

SMITH, Chief Judge.

Billie Jo and Larry Hovick appeal the district court's[1] grant of summary judgment on the basis of qualified immunity to Iowa Department of Human Service

---

[1]The Honorable Ross A. Walters, United States Magistrate Judge for the Southern District of Iowa, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c).

(DHS) employees Darci Patterson, Halicia Brown, and Kristin Walker (collectively, "defendants") on the Hovicks' claim for damages under 42 U.S.C. § 1983 for violation of their right to due process. Specifically, the Hovicks alleged that the defendants failed to afford them an opportunity to be heard on child abuse allegations prior to issuing a founded child abuse report and placement on the Iowa Child Abuse Registry (Registry). We affirm.

## I. *Background*

The Hovicks were licensed foster parents. On April 14, 2017, DHS placed eight-year-old twins—a boy and a girl—in their care at their residence in Jefferson, Greene County, Iowa. DHS removed the children from the Hovicks' home on November 3, 2017, and placed them in a foster home in Polk County, Iowa. Following their removal, the children alleged that while they were in the Hovicks' care, the Hovicks deprived them of adequate food and locked them in their rooms for indefinite periods of time. The boy reported being spanked with a metal spatula. DHS learned of the children's complaints on November 16, 2017. DHS initiated a "child abuse assessment," or investigation, into the Hovicks' alleged "denial of critical care" in not providing adequate food and supervision. *Hovick v. Patterson*, No. 4:19-CV-00030-RAW, 2021 WL 2879622, at *1 (S.D. Iowa June 29, 2021) (citation omitted). Patterson, a DHS supervisor, assigned Brown, a Child Protective Assessment Worker (CPW) to investigate the children's allegations against the Hovicks.

On November 21, 2017, Brown interviewed the children separately at their school. The children's statements "were inconsistent internally and with each other." *Id.* at *2. Brown's notes reflect the boy's report of "being spanked with a spatula, [being] forced to stay in his room for two days or longer without food compelling him to relieve himself in the closet, and being locked in his room as punishment if he went into his sister's bedroom at night." *Id.* The girl reported that her brother's door had an alarm on it and that "if it went off he was spanked [and that] he was not allowed

-2-

to come out of his room for days at a time during which he would be fed in his room." *Id.* She also reported "that they both could not use the bathroom though sometimes could, if they were really bad were deprived of food, and when she had to go to her room she was locked in." *Id.*

The State of Iowa prescribes that child abuse investigations include a child abuse assessment. Under Iowa law, such assessment must include

> [a]n interview of the person alleged to have committed the child abuse . . . . *The offer of an interview shall be made to the person prior to any consideration or determination being made that the person committed the alleged abuse.* The person shall be informed of the complaint or allegation made regarding the person. The person shall be informed in a manner that protects the confidentiality rights of the individual who reported the child abuse or provided information as part of the assessment process. The purpose of the interview shall be to provide the person with the opportunity to explain or rebut the allegations of the child abuse report or other allegations made during the assessment. The court may waive the requirement to offer the interview only for good cause. The person offered an interview, or the person's attorney on the person's behalf, may decline the offer of an interview of the person.

Iowa Code § 232.71B(4)(b)(4) (emphasis added).

Iowa law also requires that "upon completion of the child abuse assessment . . . , [DHS] shall make a written report of the assessment . . . within twenty business days of the receipt of the child abuse report." *Id.* § 232.71B(13)(a)(2). Under its administrative rules, DHS is also required to complete an addendum to the assessment within 20 days when:

1.    New information becomes available that would alter the finding, conclusion, or recommendation of the report.

2.  Substantive information that supports the finding becomes available.

3.  A subject who was not previously interviewed requests an interview to address the allegations of the report.

4.  A review or a final appeal decision modifies the report.

Iowa Admin. Code 441-175.26(1)(a)(8).

DHS did not offer the Hovicks an interview within 20 days of the abuse report. Local law enforcement's involvement affected the interview scheduling. DHS had alerted local law enforcement that the matter involved potential criminal activity. But DHS and law enforcement could not arrange a timely interview. "Patterson testified that with the 20-day period expiring on December 18, 2017, the alleged child abuse was found 'not confirmed' and the case was 'placed on addendum' to allow time for interviews with the Hovicks." *Hovick*, 2021 WL 2879622, at *2 (citation omitted). DHS had another 20 business days from December 18, 2017, to complete the addendum.

As this new 20-day period began for the addendum, DHS in Polk County, where the investigation originated, requested assistance from DHS in Greene County, where the Hovicks resided, to arrange a "courtesy interview" of the Hovicks in Jefferson. *Id.* (citation omitted). Because the holidays were approaching, DHS decided to wait until after the holidays to contact the Hovicks.

On January 3, 2018, after contacting the Jefferson, Iowa police about arranging a joint interview of the Hovicks at the police station, DHS CPW Stacy Roller contacted Mrs. Hovick. "This was the first time the Hovicks learned the twins had complained of abuse in the Hovick household . . . ." *Id.* Mrs. Hovick informed Roller that the Hovicks wanted to speak with their attorney. Mrs. Hovick contacted their

attorney, Kyle Pederson, the same day. Also that day, Pederson contacted Roller. He asked for information about the allegations and offered his office for the interview. Roller advised Pederson that law enforcement would be present during the interview. Pederson responded that law enforcement's presence might limit the Hovicks' responses. Roller then asked Brown for instructions. Brown told Roller to set up the interview to include law enforcement's presence.

The next day, Roller relayed this information to Pederson. He said that he would arrange a date with the Hovicks. He did not. Almost two weeks later, on January 16, 2018, Roller followed up with Pederson. Pederson advised that "he would try to set up the interview in the next day or so and apologized because his schedule 'had gotten mixed up.'" *Id.* (citation omitted).

The 20-day addendum period elapsed on January 18, 2018. On that date, Patterson and Brown discussed the case with Patterson's supervisor, Tracy White. White decided that the "case will be founded as the Hovicks have been offered an interview and have not made themselves available." *Id.* at *3 (citation omitted). White's decision "was based entirely on the children's allegations." *Id.* DHS did not inform the Hovicks "of any deadline for the interview." *Id.* "On January 18[, 2018,] a founded report was placed on the Registry." *Id.* DHS's investigation into the allegations against the Hovicks continued. According to Patterson, "'[t]he case was put on an addendum again immediately after the founded report' in order to complete the interviews with the Hovicks." *Id.* (alteration in original) (citation omitted).

Roller interviewed the Hovicks at Pederson's office on January 24, 2018. The Jefferson police had agreed to send an officer to attend; however, the officer did not show up. During the interview, the Hovicks refuted the children's allegations. Observations that Roller made while in the home helped support their denials. The interview was the first time that the Hovicks learned of the founded report.

"On January 23, 2018, [the day before the DHS interview,] Mrs. Hovick had signed a DHS authorization for the release of child abuse information." *Id.* After learning of the founded report during the January 24 interview, Mrs. Hovick notified her employer, Boys Town of Iowa (Boys Town), that same day. Boys Town employed Mrs. Hovick as an in-house family consultant. Boys Town had a contract with DHS to provide child welfare services for DHS. "Specifically, the contract required Boys Town to provide FSRP services—'Family Safety, Risk, and Permanency . . . Services.' Such services were 'designed to achieve safety and Permanency for Child(ren) . . . .' Mrs. Hovick's position with Boys Town was as an 'FSRP' provider." *Id.* (alterations in original) (citations omitted). Hovick notified Boys Town because "[s]he knew Boys Town would soon independently find out." *Id.* (citation omitted). "Boys Town conducted required annual background checks to ascertain if an employee was listed on the Registry." *Id.*

The next day, on January 25, 2018, DHS responded to Boys Town's request for information about Mrs. Hovick and reported that she was listed on the Registry. Boys Town's policy was to terminate employees who were on the Registry. Per its policy, Boys Town terminated Mrs. Hovick on February 5, 2018.

"By addendum to the assessment report dated February 7, 2018, the alleged denial of critical care which prompted the assessment was determined to be unfounded. The January 18 founded report was removed from the Registry. Mrs. Hovick was rehired by Boys Town on February 18, 2018." *Id.* (citations omitted).

The Hovicks brought a claim for damages under 42 U.S.C. § 1983 against Patterson, Brown, and Kristin Walker, a DHS program planner, for violation of their right to due process. The Hovicks alleged that the defendants failed to afford them an opportunity to be heard on child abuse allegations prior to issuing a founded child abuse report and placement on the Registry.

The defendants moved for summary judgment. They argued that they were entitled to judgment as a matter of law because they did not cause Mrs. Hovick's termination; the plaintiffs failed to establish an actionable liberty interest; and the defendants were entitled to absolute, or alternatively, qualified immunity.

Upon review of the motion, the district court concluded that the defendants were entitled to summary judgment on Mr. Hovick's claim because no evidence existed "that defendants caused Mr. Hovick any damages or that their conduct implicated any liberty interest of Mr. Hovick under established law." *Id.* at 1. Instead, the "case [was] all about the termination of Mrs. Hovick's employment." *Id.*

Next, the court determined that "[t]here is no evidence [of] any act or omission on [Walker's] part [that] caused Mrs. Hovick's alleged damages." *Id.* at 5. Walker "was not involved in investigating the child abuse allegations or in any decision regarding them. Her name was automatically 'populated' in the case file by computer in connection with the first addendum when Ms. Patterson left employment with DHS." *Id.* The court concluded that Walker was "not responsible for the actions of Ms. Patterson and Ms. Brown on a theory of respondeat superior." *Id.*

Finally, the district court determined that the defendants were entitled to qualified immunity. Although the court determined that "Mrs. Hovick had a liberty interest in continued employment with Boys Town," *id.* at 6, it concluded that the Hovicks failed to show that "Mrs. Hovick had a clearly established constitutional right to be interviewed prior to the interim finding [of founded child abuse]," *id.* at 9.

## II. *Discussion*

On appeal, the Hovicks argue that the district court erred in granting summary judgment based on qualified immunity to the defendants. They contend that although "[t]he [d]istrict [c]ourt properly held that [p]laintiffs had established a genuine issue

of material fact that [d]efendants had violated their constitutional rights," Appellant's Br. at 18 (bold omitted), the district court erred in concluding that the right to be informed of child abuse allegations and an opportunity to respond to such allegations prior to issuing a founded child abuse report and placement on the Registry was not clearly established.[2]

"We review *de novo* the district court's grant of summary judgment based on qualified immunity." *Irvin v. Richardson*, 20 F.4th 1199, 1204 (8th Cir. 2021) (quoting *Robbins v. City of Des Moines*, 984 F.3d 673, 677–78 (8th Cir. 2021)). In reviewing a district court's grant of summary judgment, "[w]e view the evidence in the light most favorable to [the Hovicks]" as the non-movants. *Id.* We afford them "the benefit of all reasonable inferences." *Id.* A district court properly grants summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)).

"Qualified immunity generally protects public officials from § 1983 lawsuits where the officials' conduct 'does not violate clearly established statutory or

---

[2]In their briefing, the Hovicks do not address how the district court erred in concluding that Mr. Hovick's due process claim failed because he offered no evidence "that defendants caused Mr. Hovick any damages or that their conduct implicated any liberty interest of Mr. Hovick under established law." *Hovick*, 2021 WL 2879622, at *1. Instead, as the defendants point out, the Hovicks' argument on appeal concerns the founded child abuse report's effect on Mrs. Hovick's employment. *See* Appellee's Br. at 19. To the extent that the Hovicks challenge the district court's grant of summary judgment to the defendants on Mr. Hovick's due process claim, we affirm for the reasons set forth by the district court.

constitutional rights of which a reasonable person would have known.'" *L.G. through M.G. v. Columbia Pub. Schs.*, 990 F.3d 1145, 1147 (8th Cir. 2021) (quoting *Stanley v. Finnegan*, 899 F.3d 623, 626–27 (8th Cir. 2018)). Our qualified-immunity inquiry "involv[es] two questions—whether the official's conduct violated a constitutional or statutory right, and whether that right was clearly established." *Id.* "We may take up either question first, and in this case we opt to consider whether any right violated here was clearly established, a matter that [the Hovicks] bear[] the burden to show." *Id.* (citation omitted).

"A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). Thus, "[t]o be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). The legal principle "must be 'settled law.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam)). A plaintiff need not identify "a case directly on point for a right to be clearly established"; however, "existing precedent must have placed the statutory or constitutional question beyond debate." *Rivas-Villegas*, 142 S. Ct. at 7–8 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam)). "[T]hen-existing precedent . . . . must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 138 S. Ct. at 590.

"[A] plaintiff can show that law is clearly established" in "three ways." *L.G. through M.G.*, 990 F.3d at 1147. First, a plaintiff "may identify existing circuit precedent involving sufficiently similar facts that squarely governs the situation." *Id.* Second, "a plaintiff may point to 'a robust consensus of cases of persuasive authority' establishing that the facts of her case make out a violation of clearly established right." *Id.* at 1147–48 (quoting *Boudoin v. Harsson*, 962 F.3d 1034, 1040 (8th Cir. 2020)). "[W]e do not consider a consensus based on the decision of a single circuit

-9-

and a handful of lower courts to be 'robust.'" *Id.* at 1150 (alteration in original) (quoting *Lane v. Nading*, 927 F.3d 1018, 1023 (8th Cir. 2019)). "Finally, a plaintiff may show, in rare instances, that a general constitutional rule applies with 'obvious clarity' to the facts at issue and carries the day for her." *Id.* at 1148 (quoting *Boudoin*, 962 F.3d at 1040).

"The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is 'clear to a reasonable offic[ial] that his conduct was unlawful in the situation he confronted.'" *Wesby*, 138 S. Ct. at 590 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Rivas-Villegas*, 142 S. Ct. at 8 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). We "must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *Wesby*, 138 S. Ct. at 590 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). "It is not enough that a rule be suggested by then-existing precedent . . . ." *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021). "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Wesby*, 138 S. Ct. at 590 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

"We first consider whether existing circuit precedent squarely governs this case." *L.G. through M.G.*, 990 F.3d at 1148. The Hovicks argue that "this [c]ourt has held that sufficient notice and an opportunity to be heard must occur in similar situations." Appellant's Br. at 24 (citing *Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895 (8th Cir. 1994)). They believe that the public school teacher's situation in *Winegar* is sufficiently similar to Mrs. Hovick to have put the defendants

on notice. We disagree. *Winegar* is distinguishable and therefore not controlling in the present case.

In *Winegar*, a public high school teacher allegedly physically abused a student. 20 F.3d at 898. Prior to placing the teacher on paid suspension, the school district permitted the teacher to "submit a written statement" and "allowed [him] to present his version of the incident." *Id.* Following the teacher's paid suspension, the school district conducted an investigation. *Id.* The school administrators "reviewed the [resulting] reports and supporting documentation and met with" the teacher. *Id.* The teacher "was again allowed to present his version of the incident." *Id.* The school administrators ultimately decided to suspend the teacher for four days. *Id.* Additionally, he was transferred to another school. *Id.* In response, the teacher sought administrative review. *Id.* He was permitted to meet with the superintendent, who upheld the school administrators' findings. *Id.* The teacher "then asked for a hearing before the school board and the School District refused." *Id.* The teacher filed suit, alleging violation of his due process rights. *Id.* The district court granted the school district's summary-judgment motion. *Id.*

On appeal, we acknowledged that "[a] government employee is entitled to procedural due process only when he has been deprived of a constitutionally protected property or liberty interest." *Id.* at 899. A government "employee's liberty interests are implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges." *Id.* No dispute existed that the public school teacher was a government employee. *See id.* "We f[ound] that allegations of unjustified child abuse are sufficiently stigmatizing to a teacher's reputation, honor, and good name in the community to implicate liberty interests." *Id.* And "the parties agree[d] that [the teacher] ha[d] a protected property interest in his employment by virtue of his continuing contract." *Id.*

-11-

Therefore, the question was "what process [was] due [the teacher]." *Id.* After concluding that the teacher "demonstrated a weighty private interest in retention of his job, his assignment, and his good name that are adversely affected by the School District's official actions of suspension and punitive transfer," we "assess[ed] the risk of an erroneous deprivation and the probable value of additional procedural safeguards." *Id.* at 901. Our analysis "involve[d] consideration of both the predeprivation and postdeprivation procedures utilized." *Id.* We noted that "[a]n assessment of the adequacy of predeprivation procedures depends on the availability of meaningful postdeprivation procedures." *Id.* We concluded that while "the predeprivation procedures [of notice of the charges and the opportunity to tell his account] might have been adequate if [the teacher] had been given a meaningful chance to challenge the outcome of those procedures," the teacher "was not allowed a meaningful opportunity to be heard after the initial suspension." *Id.* "We f[ound] that the School District's decision occasioned the sort of irreparable consequences that entitled [the teacher] to a full-blown hearing at some point." *Id.*

*Winegar*, however, is distinguishable from the present case and would not have alerted a reasonable DHS official that his or her conduct was unlawful in the present case. *See Wesby*, 138 S. Ct. at 590. First, the public school teacher in *Winegar* was a government employee. *See* 20 F.3d at 899. By contrast, Mrs. Hovick is not a government employee. And, even if her employer, Boys Town, qualifies as an independent contractor of the government entitled to due process protections, it is not clear under our precedents that Mrs. Hovick—an employee of an independent contractor— is also entitled to such protections. *See Jones v. McNeese*, 746 F.3d 887, 898 (8th Cir. 2014) ("Although *Paul*'s[3] 'stigma-plus' test arises most often in situations where the plaintiff is (or was) a government employee, the liberty interest also extends to independent contractors." (citation omitted)).

---

[3]*Paul v. Davis*, 424 U.S. 693 (1976).

Second, as the district court noted, in *Winegar*, "[t]he investigation had concluded and a final decision made against [the teacher]. *Pre-deprivation procedures were not the focus of the analysis*." *Hovick*, 2021 WL 2879622, at \*9 (emphasis added). Instead, we focused on the postdeprivation procedures, explaining that "at some point" the teacher would be "entitled . . . to a full-blown hearing." *Winegar*, 20 F.3d at 901. By contrast, the focus of this case is on predeprivation procedures; specifically, whether the offer of an interview as a predeprivation procedure is sufficient to satisfy procedural due process prior to an interim finding of founded child abuse. The record demonstrates that after DHS made its interim finding, the investigation continued; "the founded report was not the final word." *Hovick*, 2021 WL 2879622, at \*9. Certainly, had DHS made a final determination of founded child abuse against the Hovicks, they would have been entitled to a hearing under Iowa law. *See Iowa Code* § 235A.19(3), (4).

"We turn next to whether [the Hovicks] ha[ve] successfully demonstrated a robust consensus of persuasive authority that created a clearly established right." *L.G. through M.G.*, 990 F.3d at 1149. The Hovicks rely on persuasive authority from the Seventh Circuit, the Ninth Circuit, a federal district court, and several state courts.[4] But the Hovicks cite these cases for "general proposition[s]" of law, not for their factual similarity to the present case. *See Rivas-Villegas*, 142 S. Ct. at 8. Indeed, none of the cited cases involve "the specific context of th[is] case." *See id.* As the district

---

[4]*See* Appellant's Br. at 22–23, 26–28 (citing *Dupuy v. Samuels*, 397 F.3d 493 (7th Cir. 2005); *Humphries v. Cnty. of Los Angeles*, 554 F.3d 1170 (9th Cir. 2009), *as amended* (Jan. 30, 2009), *rev'd and remanded sub nom. Los Angeles Cnty. v. Humphries*, 562 U.S. 29 (2010); *Hughes v. Jones*, 40 F. Supp. 3d 969 (N.D. Ill. 2014); *In re W.B.M.*, 690 S.E.2d 41 (N.C. Ct. App. 2010); *J.P. v. Dep't of Human Servs.*, 170 A.3d 575 (Pa. Commw. Ct. 2017); *In re B.E.*, 875 N.W.2d 181 (Iowa Ct. App. 2015); *Jamison v. State, Dep't of Soc. Servs., Div. of Fam. Servs.*, 218 S.W.3d 399 (Mo. 2007) (en banc); *Burt v. Cnty. of Orange*, 120 Cal. App. 4th 273 (2004); *Brummer v. Iowa Dep't of Corr.*, 661 N.W.2d 167 (Iowa 2003); *K.M.T. v. Dep't of Health & Rehab. Servs.*, 608 So.2d 865 (Fla. Dist. Ct. App. 1992)).

court pointed out, this case involves "a mandatory statutory framework which required an administrative investigation and determination be made in a specified short period of time which could only be extended by like short periods (addenda) with a determination required at the end of each." *Hovick*, 2021 WL 2879622, at \*9.

"Finally, this is not the rare case where a general constitutional rule applies with 'obvious clarity.'" *L.G. through M.G.*, 990 F.3d at 1150.

In summary, the Hovicks have not proven that the law was clearly established such that the defendants should "reasonably have been expected to know that the interim finding of founded child abuse pending the interviews of the Hovicks violated Mrs. Hovick's right to due process." *Hovick*, 2021 WL 2879622, at \*9. We therefore affirm the district court's grant of summary judgment to the defendants on the basis of qualified immunity.[5]

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

---

[5]We note that the Hovicks did not specifically challenge the district court's conclusion that Walker was entitled to summary judgment on the Hovicks' claim because "[s]he was not involved in investigating the child abuse allegations or in any decision regarding them" and "no evidence [existed that] any act or omission on her part caused Mrs. Hovick's alleged damages," nor was she "responsible for the actions of Ms. Patterson and Ms. Brown on a theory of respondeat superior." *Hovick*, 2021 WL 2879622, at \*5. In any event, all defendants, including Walker, are entitled to qualified immunity based on the foregoing analysis.